The PEOPLE of the State of
Colorado, Complainant,

v.

Dennis D. COLE, Attorney–Respondent.

No. 88SA178.

Supreme Court of Colorado,
En Banc.

July 11, 1988.

Pendleton & Sabian, P.C., F. Stephen Collins, Special Disciplinary Prosecutor, Denver, for complainant.

St. Clair & Rolle, Alexander F. Rolle, Denver, for attorney-respondent.

VOLLACK, Justice.

The respondent, Dennis Cole, has been a registered attorney in the state of Colorado since 1981 and is therefore subject to the jurisdiction of this Court and its Grievance Committee. In this disciplinary proceeding, we accept the stipulation to which the parties have agreed and order Dennis Cole suspended from the practice of law for a period of nine months. We also order that Cole pay the costs of these proceedings.

I.

The stipulation establishes the respondent-attorney's conduct in the following sequence of events. Reverend Steven Moore served as pastor of a church in Pennsylvania of which Ms. Ida Campbell, age ninety-five, was a member. In 1977, Reverend Moore arranged for Ms. Campbell to be placed in Canton Christian Home in Ohio (the Home).

In the same year, Reverend Moore met with Dennis Cole (Cole or the respondent) to discuss Moore's plan to form a business called Family Book and Bible Centers, Inc. (the Corporation). Moore retained Cole to form the Corporation and serve as counsel for the Corporation. One of Moore's reasons for forming the Corporation was to provide for his own retirement.

After this initial meeting, Cole and Reverend Moore visited Ms. Campbell at the Home, at which time Cole suggested that rather than making a gift to Reverend Moore as she had planned, Campbell should invest in the Corporation as a preferred shareholder. After the meeting, Cole prepared several documents which were executed by Ms. Campbell in August 1977. There is a dispute over Campbell's competency at the time she executed the documents. The legal effect of the documents was the creation of a living trust agreement, designation of Cole as the trustee of Campbell's assets, purchase of $60,000 worth of preferred stock in the Corporation with Campbell's assets, and the appointment of Cole as her attorney, including a power-of-attorney in him. The documents also directed Cole to purchase 600 shares of the Corporation's stock with her assets and to pay expenses for Ms. Campbell's "support, health, maintenance, education and well-being."

After Campbell's execution of the documents in August 1977, the assets in her trust were transferred to Cole. Cole used the majority of Campbell's assets to purchase approximately $60,000 of preferred, non-voting stock in the Corporation. The stock called for a non-cumulative dividend of five percent per year.

In the meantime, Cole was responsible for paying all bills and expenses incurred by Campbell at the Home. After Cole became trustee, Campbell's account with the Home became delinquent; this was primarily because Campbell's stock in the Corporation did not generate sufficient income to meet her expenses. The lack of income was due in part to unsuccessful real estate investments by the Corporation. The Home did not know, and was not advised by Cole, that the bulk of Campbell's estate had been invested in the Corporation.

Because Campbell's account remained delinquent despite assurances by Reverend Moore and Cole that Ms. Campbell had significant and sufficient assets, the Home requested an investigation in 1982. The Ohio Probate Court appointed a lawyer named Thomas Albu to serve as guardian of Campbell's person and estate. Albu learned of Cole's actions in handling Campbell's estate and filed a complaint against Cole, Reverend Moore, and the Corporation for gross mismanagement, acting in a fraudulent manner, and improper self-dealing. Before trial, the three defendants settled pursuant to a stipulation. As part of the 1983 settlement, Cole paid $30,000 to Albu for the benefit of Campbell. The stipulation also provided for the entry of a $30,000 judgment in favor of the plaintiff and against Cole and Moore jointly and severally. It was specifically provided in the stipulation that the $30,000 judgment would not be dischargeable in bankruptcy. Albu agreed to forego immediate execution of the judgment in exchange for Cole and Moore's agreement to pay monthly interest for six months, at which time the balance would become due. To date, the $30,000 judgment and accrued interest has not been paid.

In 1985 Cole filed for bankruptcy in Florida, both personally and in connection with certain Florida businesses in which he was involved. His bankruptcy schedules and statement of affairs included the $30,000 judgment. Cole's position was that his bankruptcy attorney advised him that this debt was required by federal law to be listed, and that it was Albu's responsibility on behalf of Campbell to file a complaint to determine the dischargeability of the judgment. Albu did not file the complaint until one day after the deadline. The judgment was discharged and Cole's attorney filed a motion to dismiss Albu's complaint as not being timely filed. The motion was denied, Cole filed an answer denying that the judgment was not dischargeable, and a trial date was set. Cole contends that at all times he instructed his bankruptcy attorney to take necessary steps to ensure that the $30,000 judgment was not discharged.

In 1985, Albu retained another attorney, Ross Davis, Jr., to enforce and collect the $30,000 judgment against Cole, who by this time was living and working in Eagle County, Colorado. Cole's response was to advise Davis and the Eagle County District Court that a Final Order of Judgment and an automatic stay had been filed in Florida Bankruptcy Court, and that no further proceedings could take place in Eagle County because the dischargeability could be resolved only in Florida Bankruptcy Court. When Davis continued to pursue garnishment proceedings in Colorado, Cole's Florida counsel filed a complaint for injunctive relief for damages against Albu and Davis and for violation of the automatic stay. The Florida court also issued a temporary restraining order preventing further garnishment proceedings in Colorado.

Ms. Campbell died in 1986 and her successor counsel, Thomas Bernabei, continued to pursue the dischargeability issue in bankruptcy court. Cole wrote to his Florida bankruptcy counsel stating that his position was that the $30,000 was not subject to discharge, and asking her to finalize any necessary action and resolve the matter. He spoke with his bankruptcy attorney by phone and she agreed to contact Albu, Bernabei, or both, to finalize the matter.

When she failed to do so, Cole wrote directly to Bernabei offering to sign a stipulation on the dischargeability issue. In November 1987 the bankruptcy court approved a stipulation declaring the $30,000 judgment not dischargeable.

## II.

Standard 4.32 of the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) provides that "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." Here, the stipulation establishes a conflict created by Cole's simultaneous representation of Moore, the Corporation, Ms. Campbell, and her estate. This conflict caused potential injury to Ms. Campbell due to Cole's investment of a majority of her assets in the Corporation. *See People v. McDowell*, 718 P.2d 541 (Colo.1986) (simultaneous representation of both buyer and seller in sale of business without disclosure of potential problems and actual problems due to the multiple representation warrants a six month suspension.)

Standard 4.42 of the ABA Standards provides that suspension is generally appropriate when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Cole stipulates that he did not perform his fiduciary duties of proper investment of Campbell's funds and taking necessary actions to pay Campbell's expenses. The parties stipulated that Campbell's delinquent account at the Home caused potential injury to her. *See People v. Convery*, 704 P.2d 296 (Colo.1985) (misrepresentation, conduct prejudicial to the administration of justice and adversely reflecting on the attorney's fitness to practice law, neglect of a legal matter, and failure to carry out an employment contract warrant suspension of one year and a day); *People v. Pilgrim*, 698 P.2d 1322 (Colo.1985) (conduct involving dishonesty, fraud, deceit or misrepresentation, neglect of a legal matter, and failure to carry out the employment contract warrant suspension of one year and a day).

ABA Standard 6.12 provides that suspension is generally appropriate "when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or a potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." Although Cole maintains that he never intended that the $30,000 judgment be discharged in bankruptcy, he knew that his bankruptcy attorney was taking action to the contrary. In addition, he sought protection of the automatic stay when garnishment proceedings were commenced in Colorado. Finally, he did not take prompt action to confess the dischargeability complaint or to reaffirm the judgment.

The respondent-attorney acknowledges that his conduct in these matters violated DR 1–102(A)(1),[1] DR 1–102(A)(4),[2] and DR 5–105(A).[3]

In arriving at an appropriate form of discipline, we are to consider both mitigating and aggravating circumstances. In aggravation, the parties to the stipulation agreed to consider (1) Cole's prior disciplinary offense;[4] (2) Cole's alleged failure to

---

1. DR 1–102(A)(1), 7A C.R.S. (1973), provides that a lawyer shall not circumvent a disciplinary rule through actions of another.

2. DR 1–102(A)(4) provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

3. DR 5–105(A) provides:
    A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

4. In October 1986 an Inquiry Panel of the Colorado Supreme Court Grievance Committee conducted an investigation and concluded that Cole had violated DR 1–102(A)(4) by engaging in

cooperate with Mr. Albu's investigation of the handling of Ms. Campbell's estate; and (3) Cole's failure to promptly take necessary steps to ensure that the $30,000 judgment against him was not discharged. In mitigation, these factors were agreed upon: (1) Cole's legal inexperience when he became involved in handling Ms. Campbell's estate in 1977; (2) the absence of a dishonest or selfish motive in the handling of Ms. Campbell's affairs; and (3) Cole's apparent reliance on the advice of his bankruptcy counsel in Florida, and his lack of understanding of the procedures necessary to ensure the nondischargeability.

In the stipulation the parties agreed to a nine month suspension, and Cole's payment of the costs incurred in these proceedings. We recognize that under the ABA Standards, a longer suspension of one year and one day could also be appropriate. However, we have accepted the stipulated nine month suspension for a number of reasons unique to this case. The instances of misconduct involving Ms. Campbell's estate all occurred in Ohio, prior to Cole's admission to practice law in the state of Colorado in 1981. Ms. Campbell died in 1986, so there cannot be a determination of competency at the time of these events. Cole apparently did not have his own dishonest or selfish motives, because he did not benefit from the actions he took in respect to her affairs.

We conclude that a nine month suspension is appropriate under these circumstances and accept the stipulation. We order Dennis Cole suspended from the practice of law for a period of nine months from the effective date[5] of this order. We further order that the respondent pay the costs of these proceedings in the amount of $2,418.59 to the Supreme Court Grievance Committee, 600 17th Street, Suite 500S, Denver, Colorado 80202, within thirty days

from the date of the announcement of this opinion.

---

conduct involving misrepresentation. The discipline imposed was a letter of admonition.

**5.** C.R.C.P. 241.21(a) provides:
   **(a) Effective Date of Order—Winding Up Affairs.** Orders imposing disbarment or sus-

pension shall become effective thirty days after the date of entry of the order, or at such other time as the Supreme Court may order. 7A C.R.S. (1987 Supp.).