The PEOPLE of the State of Colorado, Complainant,

v.

John Douglas WATSON, Attorney–Respondent.

No. 89SA251.

Supreme Court of Colorado, En Banc.

Feb. 12, 1990.

Linda Donnelly, Disciplinary Counsel, and Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

John Douglas Watson, Denver, pro se.

PER CURIAM.

In this attorney discipline case, a hearing board of the Supreme Court Grievance Committee (Committee) recommended that the respondent, John Douglas Watson, be suspended from the practice of law for ninety days. After reviewing the findings of fact and recommendation of the board, a hearing panel of the Committee unanimously accepted the findings, but by a divided vote recommended that the respondent be suspended for six months. Upon review, we are of the opinion that a ninety-day suspension is the more appropriate discipline.

I

The respondent was admitted to practice law in Colorado in 1976, and is subject to the disciplinary jurisdiction of this court and its Grievance Committee.

The facts as found by the hearing board are as follows. In January 1983, Lee Bieker, the complaining witness, through his partnership, Dunmire, Bieker and O'Hara (hereinafter "DBO"), purchased an apartment building located on Florence Street in Aurora, Colorado from Raymond Heyer. At the time of the sale, WestAmerica Mortgage Company held a promissory note and deed of trust in the amount of $106,200 for which Heyer was responsible. DBO agreed to assume and pay the promissory note with Heyer also remaining responsible. DBO also gave Heyer a second deed of trust on the Florence Street property to secure a $30,750 promissory note with no principal or interest due until January 10, 1990. The second deed of trust and note were assigned to Georgann Weeks who, in turn, assigned them to the respondent. Respondent received the second deed of trust and note in exchange for $15,000 consideration, although the note had a face value of $31,242.37 at the time of the assignment.

In September 1986, DBO sold the property to Ron Sieber who assumed responsibility for the promissory notes, secured by the first and second deeds of trust. Sieber also gave DBO a third deed of trust to secure a $13,000 promissory note.

Prior to the sale of the property to Sieber, Bieker contacted the respondent and obtained his consent to the sale with the understanding that DBO would remain liable on the $30,750 note and the second deed of trust. Sieber was obligated to pay DBO $100 per month on the promissory note secured by the third deed of trust, and approximately $1,100 on the note secured by the first deed of trust.

On December 2, 1986, respondent wrote to Bieker and Sieber and informed them that they were in default under the terms of the note and second deed of trust, and that he would commence litigation to recover the money owed under the promissory note. Bieker contacted the respondent by telephone on or about December 5, 1986, to discuss the problem. Pursuant to this con-

versation, respondent agreed to represent DBO in a foreclosure action against Sieber, and thereafter initiated a suit in Adams County, Colorado. Respondent also agreed to represent DBO on the foreclosure of an additional property located in Arapahoe County. Through respondent's efforts, DBO acquired the Florence Street property at the Public Trustee's sale on March 11, 1987, by submitting a deficiency bid which was $10,000 less than the amount due and owing under the third deed of trust, and DBO also reacquired the Arapahoe County property on a deficiency bid.

On April 21, 1987, respondent wrote to Bieker advising him that he had received a notice of foreclosure by WestAmerica, and that if the foreclosure "is not cured and proceeds to sale" he would bring suit on the $30,750 note. After receiving a letter from Bieker, respondent wrote back to him requesting the keys to the Florence Street property and a proposal for payment of the balance due on the promissory note. The foreclosure sale on WestAmerica's first deed of trust took place on May 20, 1987. In June 1987, respondent sued Bieker for the face amount of the promissory note, plus interest and attorney fees. DBO and Bieker, who were then represented by new counsel, settled the lawsuit with the respondent.

The board heard conflicting testimony concerning whether any conflict or potential conflict between the interests of Bieker, DBO, and the respondent, as attorney for DBO and the holder of the second mortgage for the property, was disclosed by the respondent or understood by Bieker. Respondent did not recall using the term "conflict of interest" in his discussions with Bieker, nor did he recall advising Bieker or DBO to consult with another lawyer at any time. Bieker and the respondent initially thought, at the outset of the foreclosure proceedings, that there was a unity of interest as to the property in question.

At the time the respondent agreed to represent DBO, there was no written fee agreement; however, he agreed to represent the partnership on a contingent fee basis in which he would receive one-third of

whatever was recovered, plus court costs of approximately $500. There was conflicting testimony as to whether this fee agreement was an alternative to the partnership being represented under some prepaid legal service plan.

Bieker did not recall discussing with the respondent any present or potential conflict of interest, or the fact that respondent's position as attorney for the partnership and as the holder of the second mortgage might lead to a problem in the future. Both Bieker and the respondent agreed that it was Bieker's position that because the rents would not cover the payment, DBO did not wish to have the property back. The primary focus of respondent's practice is real estate, and, on a regular basis, he has been involved in the purchase of second or third mortgage obligations and many foreclosure actions.

The board concluded that the respondent had entered into an attorney-client relationship without adequately discussing with the client his business and personal interest in the property in question, and without discussing the potential conflict which would arise if a suit were brought by the respondent against the client to collect monies owed to him under the second mortgage. The board found that the respondent violated DR 5–101(A) by failing to discuss his personal interests with his client and how they might differ from those of the client, and by failing to advise the client that he could retain other counsel who would not be similarly situated. The board also concluded that the combined debtor-creditor/attorney-client relationship between the respondent and DBO established a conflict which demanded a full and complete disclosure by respondent, which was not made.

In arriving at its recommendation of appropriate discipline, the board considered the respondent's record of prior discipline and the *ABA Standards for Imposing Lawyer Sanctions* (1986). As to the former, the board noted that in 1988, the respondent received two private censures: one for contacting an opposing party who was represented by counsel and having di-

rect communications with a person known by him to be represented by counsel; and the other for failing to adequately advise his client concerning a loan and failing to provide his client with a settlement sheet reflecting the disbursement of loan funds. The respondent also received a letter of admonition in 1988, for giving improper advice to a party who was not represented at a real estate closing, causing the party to release a deposit which the party had previously made. With reference to the ABA Standards, the board found Standard 4.32, which provides that: "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client," to be applicable. The board also considered the factors set out in Standard 9.0, *Aggravation and Mitigation*. It found the following aggravating factors to be present: (1) prior disciplinary offenses, (2) dishonest or selfish motive, (3) refusal to acknowledge wrongful nature of conduct, and (4) substantial experience in the practice of law.

The board recommended that the respondent be suspended from the practice of law in the State of Colorado for a period of ninety days, and that the costs of these disciplinary proceedings be assessed against him. It also recommended that the respondent be ordered to thoroughly review the Code of Professional Responsibility pertaining to a lawyer's obligation to his clients, and that he be ordered to participate in at least six hours of Continuing Legal Education courses devoted solely to the Code of Professional Responsibility. A hearing panel accepted the board's findings and all of the recommendations, except the period of suspension. A majority of the panel recommended that the respondent be suspended for six months.

## II

The respondent contends that there is no factual basis for a finding that there was a conflict in his representation, because the foreclosure was completed before Bieker breached his obligation. He argues that when Bieker breached his obligation, he gave Bieker notice of the breach and the conflict and "that is all that could be required."

We reject respondent's argument. The hearing board's factual findings are binding upon this court unless, after considering the record as a whole, we conclude that the findings are clearly erroneous and unsupported by substantial evidence. *People v. Gibbons*, 685 P.2d 168, 172–73 (Colo. 1984).

The board's findings of fact fully support its conclusion that the respondent's conduct in representing DBO without fully disclosing and discussing potential conflicts of interest violated DR 5–101(A), which states:

Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

However, the determination of the discipline to be imposed must ultimately be made by this court. *See, e.g., People v. Haase*, 781 P.2d 80 (Colo.1989). We are of the opinion that a ninety-day suspension is the appropriate discipline.

Accordingly, the respondent is suspended from the practice of law for a period of ninety days, and is ordered to comply with the provisions of C.R.C.P. 241.21, relating to termination of all legal matters, the giving of notice to all clients ·and opposing counsel, and the maintenance of appropriate records as proof of compliance. The respondent is ordered to review the Code of Professional Responsibility pertaining to a lawyer's obligation to his clients, and to participate in six hours of Continuing Legal Education courses devoted to the Code of Professional Responsibility by July 1, 1990. The respondent is further ordered to pay the costs of these proceedings in the amount of $288.20 by tendering this sum to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Do-

minion Plaza, Denver, Colorado 80203, within thirty days of this date.