The **PEOPLE** of the State of Colorado, Complainant,

v.

**John D. WATSON, Attorney–Respondent.**

**No. 92SA234.**

Supreme Court of Colorado, En Banc.

July 20, 1992.

Linda Donnelly, Disciplinary Counsel, James H. Chalat, Sp. Asst. Disciplinary Counsel, Denver, for complainant.

Ashen & Associates, P.C., George T. Ashen, Denver, for atty.-respondent.

PER CURIAM.

The respondent and the special assistant disciplinary counsel entered into a

stipulation, agreement, and conditional admission of misconduct.[1] *See* C.R.C.P. 241.-18. In the stipulation, the respondent agreed to the following terms and conditions of discipline: (1) the imposition of an eighteen-month suspension from the practice of law; (2) to continue to perform certain *pro bono* legal services until the effective date of the suspension; (3) to pay restitution to a client prior to reinstatement; (4) submission to an independent evaluation prior to reinstatement; and (5) payment of the costs incurred in conjunction with this matter within thirty days after the acceptance of the stipulation. An inquiry panel of the grievance committee unanimously approved the stipulation and agreement. We accept the stipulation and agreement, and the recommendation of the inquiry panel, and order that the respondent be suspended for eighteen months, pay restitution and submit to an examination in accordance with the stipulation, and pay the costs of these proceedings.[2]

### I.

The respondent was admitted to the bar of this court on October 21, 1976, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b). The stipulation, agreement, and conditional admission of misconduct disclose that in 1986, Wells Construction Company ("Wells Construction") entered into a contract with Hormoz Bakhtiar to complete improvements on Bakhtiar's Marina Pointe Flower Shop, located in the Marina Pointe Shopping Center in Jefferson County. Wells Construction is wholly owned and controlled by Lawrence Dean Wells ("Wells")

and his family. When Bakhtiar defaulted on his agreement with Wells Construction, leaving an unpaid balance due of $23,000, Wells Construction asserted a mechanic's lien on the Marina Pointe Flower Shop to collect the balance.

Upon the advice of counsel other than the respondent, Wells entered into a "Contract of Guaranty" with the following pertinent provisions: (1) Wells would release the mechanic's lien and would loan an additional $50,000 to a partnership (which included Bakhtiar as one of the partners) named 7444 West Chatfield Partners, Ltd. ("Chatfield Partners"), in exchange for a promissory note in the amount of $81,-353.97; and (2) Bakhtiar's partner, Nezameddin Farmanfarmaian, would guarantee payment of the promissory note and would convey to Wells a security interest in his own bar and restaurant located in the Marina Pointe Shopping Center, The Yacht Club. Bakhtiar, Farmanfarmaian, and Chatfield Partners also held various ownership interests in the Marina Pointe Shopping Center.

Bakhtiar defaulted on the promissory note, and Farmanfarmaian defaulted on the guaranty. Wells retained the respondent to collect on the note on October 30, 1987, and a few days later the respondent filed an action in Arapahoe County District Court, naming Bakhtiar and Chatfield Partners as defendants. On December 30, 1987, a default judgment in favor of Wells Construction was entered against Chatfield Partners in the amount of $93,004.61.

On March 9, 1988, the respondent filed a new civil action in Jefferson County District Court entitled "Application for Receivership." *See* C.R.C.P. 66. The named de-

---

1. The disciplinary counsel filed a motion in this court for the appointment of a special disciplinary counsel because of the possibility that one of the assistant disciplinary counsel would be required to testify. The respondent did not object to the appointment, and we granted the motion on March 25, 1991.

2. The respondent filed an objection in this court to the statement of costs "to the extent that they include fees and expenses for [the special assistant disciplinary counsel]." The respondent admits that he "agreed to pay the expenses of this matter in the Stipulation, Agreement, and Con-

ditional Admission of Misconduct," but states that he "did not agree to pay the fees of the [special assistant disciplinary counsel]." The respondent has not asked, however, to withdraw the stipulation and agreement. The disciplinary counsel responds that the expenses associated with the special counsel do not include attorney's fees. The special counsel was appointed by this court and not by the disciplinary counsel, as the respondent suggests. We find the special counsel's expenses were properly included as "expenses of this matter."

fendant was "Farmanfarmaian d/b/a The Yacht Club." On the same day, the court appointed a receiver for The Yacht Club. Wells Construction entered into an agreement with the receiver on March 15, 1988. However, before filing the application for the appointment of a receiver, the respondent failed to adequately inform his client, or himself, of the possible risks of requesting a receivership, and of the responsibilities and duties of the receiver to the court and the persons interested in the subject property.

On March 28, 1988, the respondent filed a third civil action on behalf of Wells Construction, also in Jefferson County District Court, naming Bakhtiar and a bank as defendants, and asking for a sale of The Yacht Club under the security agreement arising from the Contract of Guaranty.

By May 1988, a receiver had also been appointed to manage the shopping center. This receiver filed a forcible entry and detainer action in Jefferson County District Court with the object of defeating the receivership of The Yacht Club. The three Jefferson County District Court actions were consolidated into the original receivership action.

On or about April 1, 1988, the respondent met with Wells, Bakhtiar, and Farmanfarmaian at his office. The respondent agreed to receive $40,000 from the defendants which Wells understood to be in partial satisfaction of the judgment. However, no written agreement was reached with respect to the funds. After receiving the $40,000, the respondent filed a motion to terminate the receivership, but the receiver, who had incurred obligations in the operation of The Yacht Club, objected. The district court determined after a hearing that the respondent had acted in a fiduciary capacity when he accepted the $40,000. The court further held that the respondent received the funds in return for an agreement to terminate the receivership of The Yacht Club and to apply the funds to certain critical debts of The Yacht Club, rather than as a credit on the judgment obtained by Wells Construction. These outstanding debts included rent, back taxes owed to the Colorado Department of Revenue, operating expenses of The Yacht Club, and receivership fees. The district court ordered the respondent to disburse the $40,000 to creditors of the receivership and The Yacht Club first. Although the respondent was on notice that he had an actual conflict of interest with his client, he did not inform the client of the conflict and did not take any steps to withdraw from representation of the client.

On June 10, 1988, the respondent took an appeal from the district court ruling to the Colorado Court of Appeals, but did not raise the issue of the proper disbursement of the $40,000. In the meantime, the respondent paid the Department of Revenue from the $40,000, and turned the rest of the funds over to the receiver. Following a hearing on June 16, 1988, the district court noted that the respondent had agreed to withdraw the appeal. Nevertheless, the respondent took no action to dismiss the appeal until November 2, 1988, and the appeal was not dismissed until December 6, 1988, because of defects in the respondent's motion. The district court ordered the respondent to pay Farmanfarmaian's attorney's fees and any costs incurred after June 7, 1988, to prepare the record on appeal. The district court concluded that the respondent's actions were vexatious and unreasonable, and unnecessarily complicated and prolonged the proceeding.

On October 18, 1988, the district court granted Farmanfarmaian's request to file counterclaims in the receivership action. The respondent did not file a reply to the counterclaims, and the court entered a default against Wells Construction. A hearing was set on the amount of damages. The respondent did not adequately inform Wells that a default had been entered. Wells discovered the entry of the default in February 1989, and subsequently fired the respondent. Wells retained another attorney to vacate the entry of default and wind up post-receivership matters.

## II.

The respondent has admitted, and we agree, that his conduct violated DR 6–

101(A)(1) (a lawyer shall not handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it); DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances); and DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer). Moreover, the respondent's continued representation of Wells after the district court found that he received the $40,000 as a fiduciary violated DR 5–105(B) (a lawyer shall not continue multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing different interests, except to the extent permitted by DR 5–105(C)).

### III.

■ The respondent has consented to the imposition of an eighteen-month suspension with certain conditions for reinstatement, and the inquiry panel has approved the stipulation. The respondent has also agreed to provide restitution consisting of the repayment of any fees to Wells Construction that the respondent collected arising from the above matters, and to reimburse Wells Construction for any fees charged by subsequent counsel to vacate the entry of default.

At least three of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) ("ABA *Standards*") apply to this case and indicate that a period of suspension is appropriate. In the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA *Standards* 4.42. In addition, "[s]uspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." *Id.* at 4.52. Finally, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." *Id.* at 4.32.

In aggravation, the parties have stipulated: (1) that the respondent has a history of discipline, including a previous ninety-day suspension, *People v. Watson*, 787 P.2d 151 (Colo.1990), two private censures, and a letter of admonition, ABA *Standards* 9.22(a); (2) that the respondent has evidenced a pattern of misconduct, *id.* at 9.22(c); and (3) that this case presents multiple offenses, *id.* at 9.22(d). With respect to factors in mitigation, the special assistant disciplinary counsel and the respondent have agreed: (1) that the respondent's conduct did not involve a dishonest or selfish motive, *id.* at 9.32(b); (2) that the respondent has made full and free disclosure during the disciplinary proceedings and has cooperated with the special assistant disciplinary counsel, *id.* at 9.32(e); and (3) that the respondent's performance of *pro bono* legal services for a lengthy period of time demonstrates the existence of good character or reputation, *id.* at 9.32(g), interim rehabilitation, *id.* at 9.32(j), and the presence of remorse, *id.* at 9.32(*l*).

After a review of the respondent's misconduct as contained in the stipulation, and weighing the factors in aggravation and mitigation, we conclude that a reasonably long period of suspension is warranted. In conjunction with the additional terms and conditions to which the respondent has consented, we conclude that a suspension for eighteen months is appropriate. Accordingly, we accept the stipulation and agreement, and the recommendation of the inquiry panel.

### IV.

It is hereby ordered that John D. Watson be suspended from the practice of law for eighteen months, effective thirty days after the issuance of this opinion. C.R.C.P. 241.-21(a). Prior to reinstatement, the respon-

dent shall comply with all of the conditions in C.R.C.P. 241.22(b)–(d). It is further ordered that, prior to an application for reinstatement, Watson make restitution to Wells Construction, including the payment of statutory interest, as provided in the Stipulation, Agreement, and Conditional Admission of Misconduct at 17. It is further ordered that, prior to application for reinstatement, Watson submit to an independent evaluation as provided in the Stipulation, Agreement, and Conditional Admission of Misconduct at 17. Finally, it is ordered that Watson pay the costs of these proceedings, in the amount of $1,880.02, within 30 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203.