In re John Scott HAMILTON and
Charlotte Belle Hamilton,
Debtors.

HARTWOOD AVIATION, INC.; Hart-
wood Paracenter, Inc.; Harry C.
Schoelpple; and Robert T. Dorminey,
Plaintiffs,

v.

John Scott HAMILTON a/k/a J.
Scott Hamilton, Defendant.

Bankruptcy No. 92–10290–RJB.
Adv. No. 92–1703–SBB.

United States Bankruptcy Court,
D. Colorado.

Nov. 27, 1992.

George T. Carlson, Englewood, Colo., for debtor/defendant.

Christine J. Jobin, Katch, Wasserman & Jobin, Denver, Colo., for plaintiffs.

## ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon Plaintiffs' Motion for Summary Judgment and Memorandum Brief in Support thereof filed August 4, 1992 and Defendant's Response filed August 21, 1992 and Reply Brief filed September 16, 1992. The Court, having reviewed the file and being advised in the premises, makes the following findings of fact and conclusions of law.

### I. *Factual Background.*

In 1985 or 1986, Plaintiffs herein (collectively "Hartwood") employed J. Scott Hamilton and J. Scott Hamilton, P.C. as counsel to defend them in civil litigation in Virginia in connection with a parachuting accident which allegedly occurred in connection with the operation of its business (the "Civil Suit"). At the conclusion of the trial on the matter, a Virginia jury entered a verdict against Hartwood. Thereafter, Hartwood filed a legal malpractice action against Hamilton in Virginia seeking compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,-000.00 [1] (the "Malpractice Suit").

The Malpractice Suit resulted in a jury award of $198,000.00 in compensatory damages and $160,000.00 in punitive damages, jointly and severally against J. Scott Hamilton and J. Scott Hamilton, P.C. (collectively "Hamilton"). Hartwood asserts that compensatory damages were awarded based upon express findings by the jury that Hamilton owed Hartwood a duty of care, that Hamilton breached that duty, and that

---

1. The complaint alleged, among other things, that Hamilton (a) failed to properly perform discovery, (b) failed to properly prepare for trial, (c) conducted negligent discovery, (d) failed to identify in the designation of witnesses and exhibits, essential witnesses and expert witnesses for trial, thereby excluding their testimony, (e) failed to respond to discovery requests, and (f) generally failed to present an adequate defense at trial.

Hamilton was negligent by reason of that breach.[2] Similarly, Hartwood asserts that punitive damages were awarded based upon express findings by the jury that Hamilton's conduct was "willful and wanton." [3]

On January 10, 1992, John Scott Hamilton individually ("Debtor") filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code. The within Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523(a)(4) and § 523(a)(6) was filed May 14, 1992. The Complaint asserts that the judgment entered against the Debtor in the Malpractice Suit is non-dischargeable.

## II. *Analysis.*

■ On a motion for summary judgment, this Court must view the record, pleadings, and inferences in the light most favorable to the party opposing the motion. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir.1981); *In re American Cable Publications, Inc.,* 62 B.R. 536, 537–538 (D.Colo.1986). Summary judgment may only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir.1987); *Grayson v. American Airlines, Inc.,* 803 F.2d 1097, 1101 (10th Cir.1986). *Frito–Lay, Inc. v. Retail Clerks Union Local*

*No. 7,* 629 F.2d 653, 656 (10th Cir.1980). To determine if there is an issue of material fact in the instant case, this Court must determine the applicability and effect of the collateral estoppel doctrine.

■ Under the collateral estoppel doctrine, a final judgment on the merits in a prior action precludes relitigation of issues actually litigated and necessary to the outcome of the first action in a later suit between the same parties. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). *See, generally, Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). "Collateral estoppel protects litigants from the burden of relitigating an identical issue with the same party and promotes judicial economy by preventing needless litigation." *In re Mueller,* 34 B.R. 869, 871 (Bankr.D.Colo.1983) (citing *Parklane Hosiery, supra*).

■ Although some courts have refused to apply collateral estoppel in dischargeability actions based upon a fear of interference with the exclusive jurisdiction of the Bankruptcy Court to determine the dischargeability of debts,[4] the Tenth Circuit disagrees. *In re Wallace,* 840 F.2d 762 (10th Cir.1988). While the Bankruptcy Court ultimately decides if a debt is dischargeable under the various provisions of

---

**2.** *Jury Instruction "D"* provided as follows:

An attorney has a duty to use a reasonable degree of care, skill and diligence in handling a matter entrusted to him by a client.

If an attorney fails to perform this duty, then he is negligent.

*Jury Instruction "F"* provided as follows:

Negligence is the failure to use ordinary care. Ordinary care is the care a reasonable person would have used under the circumstances of this case.

*Jury Instruction "H"* provided as follows:

The plaintiffs have the burden of proving by the greater weight of the evidence that the defendant was negligent and that the defendant's negligence proximately caused the judgment awarded to Marjorie Henderson against the plaintiffs and any of the damages to plaintiffs resulting from said judgment.

*Jury Instruction "G"* provided in part as follows:

When a party has the burden of proof on an issue, then he must prove that issue by the greater weight of all the evidence. This is

sometimes called the preponderance of the evidence....

**3.** *Jury Instruction "S"* provided as follows:

'Willful and wanton conduct' is acting consciously in disregard of another person's rights or acting with a reckless indifference to the consequences to another person when the defendant is aware of his conduct and is also aware, from his knowledge of existing circumstances and conditions, that his conduct would probably result in injury to another.

*Jury Instruction "R"* provided, in part, as follows:

If you find that the plaintiffs are entitled to be compensated for their damages, and if you further believe by the greater weight of the evidence that the defendant acted under circumstances amounting to a willful and wanton disregard of the plaintiffs' rights, then you may also award punitive damages....

**4.** *See, In re Rahm,* 641 F.2d 755 (9th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).

Section 523, collateral estoppel may be invoked to prevent a party from relitigating settled facts if the following three conditions are met: "1) the issue to be precluded is the same as that involved in the prior state action, 2) the issue was actually litigated by the parties in the prior action, and 3) the state court's determination of the issue was necessary to the resulting final and valid judgment." *Id.*, at 765.

The parties do not appear to dispute that the issues were actually litigated and necessary to the jury's verdict in the previous Malpractice Suit. The only disputes appear to be whether there is identity of issues and whether the evidentiary standards used by the Virginia court were sufficient.

Hartwood relies upon the award of punitive damages to establish that there has been a finding that the Debtor's conduct was "willful and malicious" as those terms are used in 11 U.S.C. § 523(a)(6). This Court must, therefore, compare the standards under which the jury was instructed that it could award punitive damages with the standards by which the dischargeability of a debt is determined under Section 523(a)(6).

 Section 523(a)(6) provides that the entry of a discharge does not discharge a debtor from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added). The Tenth Circuit has addressed the meaning of these terms.

> The 'willful' element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of. 'Willful' conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct. Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception.
>
> *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989) (citations omitted).

The focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, 'not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act.'

> *Id.* (quoting *In re Egan,* 52 B.R. 501, 507 n. 4 (Bankr.D.Minn.1985)).

*See, generally, In re Grey,* 902 F.2d 1479, 1481 (10th Cir.1990) (maliciousness is established if the debtor possesses actual knowledge, or it is reasonable foreseeable, that his conduct will result in injury to the creditor); *In re Tague,* 137 B.R. 495, 502 (Bankr.D.Colo.1991) (malice "requires a showing of either: (1) a specific intent to injure; or, (2) some deliberate conduct with actual knowledge or the foreseeability that injury will necessarily result from that conduct").

 The Debtor argues that, since the jury was instructed on and found that only "willful and wanton" conduct was present, the issues actually decided were not identical to the issues before this Court: Whether Defendant caused "willful and malicious" injury. This Court disagrees. The jury was instructed that "willful and wanton" conduct means either (1) a conscious act in disregard of another's rights or (2) an act in reckless indifference to the consequences to another when the defendant is (a) aware of his conduct and (b) aware, from his knowledge of existing circumstances and conditions, that his conduct would probably result in injury to another.[5] This instruction clearly comports with the standards established in this Circuit for a finding of "willful and malicious." *See, Posta, supra.*

 Identity of the issues in the context of collateral estoppel means "a substantive identity between the pertinent issues in the two proceedings, not in the precise terms in which the issues or the parties' claims are described." *Tague, supra* at 503. This

---

**5.** *See,* Jury Instruction "S," *supra* at n. 3. *See, also, Jordan v. Sauve,* 219 Va. 448, 452, 247 S.E.2d 739, 741 (1978) ("willful or wanton conduct imports knowledge and consciousness that injury will result from the act done.").

Court finds that as to the Section 523(a)(6) claim there is an identity of the issues.

■■■ In addition, "collateral estoppel applies only if the evidentiary standard applied to the factual questions in the first action was equal to or greater than that applicable to a Section 523(a) claim." *Id.,* at 503. In a unanimous decision, the United States Supreme Court has held in *dicta* that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, applies to all exceptions from dischargeability of debts set forth in Section 523(a). *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The Debtor argues that this Court should follow Judge Clark's lead in this District that, despite *Grogan* and subsequent Tenth Circuit *dicta,*[6] "the Tenth Circuit law binding on this Court [remains unchanged] until there is an actual decision on the issue." *Tague, supra* at 504. In her opinion, Judge Clark acknowledged that a number of courts had since applied a preponderance standard to claims under other portions of Section 523(a) including Section 523(a)(6) following the *Grogan* opinion. *Tague, supra* at 504 n. 12. Judge Clark, however, refused to follow the apparent trend.

Since Judge Clark's opinion in *Tague,* Judge Kane of the District Court has published at least two cases in which he applied the preponderance of evidence standard to various Section 523(a) claims in reliance on the *dicta* in *Grogan* and in one case the Tenth Circuit has affirmed. *In re Hansen,* 131 B.R. 167, 169 n. 1 (D.Colo. 1991), *aff'd,* 977 F.2d 595 (10th Cir.1992) (§ 523(a)(6)); *In re Dunston,* 146 B.R. 269 (D.Colo.1992) (affirming, in part, 117 B.R. 632 (Bankr.D.Colo.1990)) (§ 523(a)(2)(A)). This Court believes that any hesitation on the part of judges in this District to adopt the broad scope of the *dicta* in *Grogan* in all Section 523(a) cases has been assuaged.[7]

The jury was instructed that punitive damages could be awarded in the Malpractice Suit if they found "by the greater weight of the evidence that the defendant acted under circumstances amounting to a willful and wanton disregard of the plaintiffs' rights."[8] The jury was also instructed that "the greater weight of all the evidence" is "sometimes called the preponderance of the evidence."[9] This Court finds that the evidentiary standard applied to the factual questions in the Malpractice Suit is equal to the evidentiary standard applicable to the claims in the instant action.

As to the claims under 11 U.S.C. § 523(a)(4), Hartwood relies upon the award of compensatory damages to establish that the Debtor's conduct amounted to "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). As before, this Court must compare the standards under which the jury was instructed that it could award compensatory damages and the standards by which the dischargeability of a debt is determined under Section 523(a)(4).

■■■ With respect to an exception to discharge based upon Section 523(a)(4), it must first be established that the Debtor owed a fiduciary duty to Hartwood. The jury necessarily found that the Debtor had a duty of care in handling Hartwood's case.[10] A duty of care without more, however, is insufficient to create a fiduciary relationship sufficient to satisfy 11 U.S.C. § 523(a)(4).

In bankruptcy, the meaning of fiduciary is limited in application to an express or technical trust. The 'debts alleged to be non-dischargeable must rise from the breach of trust obligation imposed by law, separate and distinct from any

---

6. *In re Serafini,* 938 F.2d 1156, 1157 (10th Cir. 1991).

7. This Court also recognizes the probable validity of Hartwood's distinction of this case from *Tague* on the basis of the interplay between civil and criminal standards on both substantive and evidentiary issues. This Court believes that the distinction is unnecessary, however, in light of the continued succession of cases with holdings contrary to *Tague.*

8. *See,* Jury Instruction "R," *supra* at n. 3 (emphasis added).

9. *See,* Jury Instruction "G," *supra* at n. 2.

10. *See,* Jury Instruction "D," *supra* at n. 2.

breach of a contract.' [Citations omitted.] 'An implied or constructive trust is insufficient. It is axiomatic that before there can be a trust, there must be a res or particular property entrusted to the fiduciary for the benefit of another.' [Citation omitted.]

*In re Kudla*, 105 B.R. 985, 990 (Bankr. D.Colo.1989) (emphasis added).

*See, generally, In re Romero*, 535 F.2d 618, 621 (10th Cir.1976) (" 'Fiduciary capacity' as used in [the Act] has been held to connote the idea of trust or confidence, which relationship arises whenever one's property is placed in the custody of another."); *In re Currin*, 55 B.R. 928, 933–934 (Bankr.D.Colo.1985) (a real estate broker handling the receipt of rental revenues is a fiduciary).

 Although there is ample evidence that Hartwood and the Debtor had a trusting and confidential relationship, the evidence before this Court shows that the relationship (1) was not tantamount to the creation of an express trust in fact or in law, and (2) evidently lacked the requisite *res* or entrusted property. *Accord, In re Wade*, 43 B.R. 976, 983 (Bankr.D.Colo. 1984). This Court cannot, therefore, find that, as a matter of bankruptcy law, a fiduciary relationship existed sufficient to satisfy the requirements of Section 523(a)(4).[11] *Accord, In re Stokes*, 142 B.R. 908 (Bankr.N.D.Cal.1992).

Having determined that Hartwood has not shown that the Debtor acted as a fiduciary within the meaning of Section 523(a)(4), this Court need not reach the issue of whether fraud or defalcation was committed.

### III. *Conclusion.*

Accordingly, it is

ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED, IN PART, as to the Second Claim for Relief under 11 U.S.C. § 523(a)(6), and DENIED, IN PART, as to the First Claim for Relief under 11 U.S.C. § 523(a)(4).

---

11. As a matter of state law, the result appears to be essentially the same. *See, Pickus v. Virginia*, 232 Va. 5, 10, 348 S.E.2d 202, 205 (1986) (a closing or settlement attorney who receives and handles funds is a fiduciary); Virginia Legal Ethics Opinion No. 109 (an attorney assumes a strict fiduciary responsibility when he holds money belonging to a client); Virginia Legal Ethics Opinion No. 1358 (attorney acting as a fiduciary to a trust or estate). *See, also, People v. Watson*, 833 P.2d 50, 52 (Colo.1992) (attorney acted in a fiduciary capacity when funds were entrusted to him); *People v. Kaemingk*, 770 P.2d 1247, 1249 (Colo.1989) (breach of fiduciary duty when entrusted funds are converted to personal use); *People v. Harthun*, 197 Colo. 1, 3, 593 P.2d 324, 325 (1979) (same); *People v. Cole*, 760 P.2d 1108, 1110 (Colo.1988) (attorneys have the fiduciary duty to properly invest entrusted funds).