In re Carmen Joseph LIBRANDI, Debtor.

Joan WINDSOR, Plaintiff–Appellant,

v.

Carmen Joseph LIBRANDI,
Defendant–Appellee.

Bankruptcy No. 1–93–00422.
Adv. No. 1–93–00406.
Civ. A. No. 1:CV–95–132.

United States District Court,
M.D. Pennsylvania.

June 22, 1995.

Jack F. Ream, Kain, Brown & Roberts, York, PA, for Carmen Joseph Librandi.

Elliot A. Strokoff, Strokoff & Cowden, Harrisburg, PA, for Joan Windsor.

Steven M. Carr, Trustee, York, PA.

### MEMORANDUM

CALDWELL, District Judge.

We are considering an appeal from an Order of the United States Bankruptcy Court for the Middle District of Pennsylvania, filed December 29, 1994, and exercise appellate jurisdiction pursuant to 28 U.S.C. § 158.

## I. BACKGROUND

On March 8, 1993, Carmen Librandi filed a petition for relief under the Bankruptcy Code and a Chapter 13 bankruptcy plan, to which the Appellant, Joan Windsor, filed objections on April 23, 1993. After the case was converted to a Chapter 7 case, Windsor filed an objection to Librandi's list of exempt property, alleging that Librandi's residence was not held in a valid tenancy by the entireties. She also filed a complaint to ascertain the dischargeability of her claim against Librandi pursuant to 11 U.S.C. § 523(a)(4).[1]

The Bankruptcy Court determined that: (1) the debt was not nondischargeable under section 523(a)(4) of the Bankruptcy Code because Librandi was not acting in a "fiduciary capacity" for purposes of that section; and (2) Librandi's residence was validly held as a tenancy by the entireties with his wife. On January 6, 1995, Windsor filed the present appeal.

## II. LAW AND DISCUSSION

### A. Standard of Review

 A district court acts in an appellate capacity in reviewing a bankruptcy court's decision. We review conclusions of law *de novo*, *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir.1991), but may reverse findings of fact only if they are clearly erroneous. Bankruptcy Rule 8013; *Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273, 277 (3d Cir. 1991). Factual findings are clearly erroneous if we are "left with the definite and firm conviction that a mistake has been committed." *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 484 (E.D.Pa.1989) (citations omitted). "This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced it would have weighed the evidence differently." *Id.* (citations omitted).

### B. Dischargeability

Windsor contends that Librandi's debt to her is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), which provides that

---

1. It is unclear from the record whether Windsor ever obtained a judgment against Librandi. However, since Librandi has not raised the issue, we will not address it.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;

11 U.S.C. § 523(a)(4). In order to prevail under this exception to discharge, Windsor must prove, by a preponderance of the evidence, that: (1) Librandi was acting in a fiduciary capacity; and (2) while acting in that capacity, he engaged in fraud or defalcation.

■ The Bankruptcy Court concluded that Librandi engaged in improper conduct in his dealings with Windsor. [Memorandum Opinion at 14].[2] It also determined that although Librandi was likely a common law fiduciary, "Windsor failed to establish the existence of an express trust or technical trust relationship between herself and Librandi such as would be required to render him a 'fiduciary' for purposes of section 523(a)(4)." [Memorandum Opinion at 18–19]. Windsor argues that the court applied an incorrect standard in finding that Librandi was not acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4). We review this determination de novo.

■ While the issue of whether a debt is dischargeable under section 523(a)(4) is a question of federal law, courts also look to state law to determine whether the requisite trust relationship exists. Matter of Bennett, 989 F.2d 779, 784 (5th Cir), cert. denied sub nom., Bennett v. LSP Inv. Partnership, —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993). The traditional definition of fiduciary, involving a person who stands in a special relationship of trust, confidence, and good faith, is "far too broad for the purposes of bankruptcy law." Matter of Rausch, 49 B.R. 562, 564 (Bankr.D.N.J.1985); see also Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). Rather, beginning with the Supreme

Court decisions in Chapman v. Forsyth, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844) and Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), courts have held that the fiduciary relationship referred to in section 523(a)(4) is limited to instances involving express and "technical" trusts. See, e.g., Matter of Angelle, 610 F.2d 1335, 1338–39 (5th Cir.1980).[3] The reason for this narrow construction is to promote the bankruptcy law's "fresh start" policy. Id. "Most courts today, however, recognize the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust type obligations are imposed pursuant to statute or common law." Bennett, 989 F.2d at 784–85; see also In re Bagel, No. 92–11440F, 1992 WL 477052, *12 (Bankr. E.D.Pa. Dec. 17, 1992), aff'd without opinion, 22 F.3d 300 (3d Cir.1994).

■ There are three elements necessary to establish an express trust: (1) a declaration of trust; (2) a clearly defined trust res; and (3) an intent to create a trust relationship. In re Ballantyne, 166 B.R. 681, 686 (Bankr.E.D.Wis.1994); In re Janikowski, 60 B.R. 784, 788 (Bankr.N.D.Ill.1986). Windsor does not, and cannot, argue that the parties had an express trust agreement in this instance. The difficulty, however, lies with the determination of the definition and scope of "technical trusts". Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir.1993). "An express or technical trust must be either one in which a formal document is executed which establishes the rights and duties of the parties, or one in which trust type obligations are imposed pursuant to state or common law." In re Johnson, 174 B.R. 537, 541 (Bankr. W.D.Mo.1994). Some courts have determined that state statutes can create a technical trust for purposes of section 523(a)(4). See, e.g., Quaif, 4 F.3d at 953; Carey Lumber Co. v. Bell, 615 F.2d 370, 374 (5th Cir. 1980). Other courts have held that state common law can create the requisite fiducia-

---

2. Although the court did not determine whether Librandi engaged in fraud, it did find that he made material misrepresentations which were relied upon by Windsor. [Memorandum Opinion at 14].

3. Additionally, the trust must arise prior to the act of wrongdoing, thus eliminating implied, constructive, and resulting trusts. In re Short, 818 F.2d 693, 695 (9th Cir.1987).

ry relationship. *See, e.g., Matter of Marchiando,* 13 F.3d 1111, 1115 (7th Cir.), *cert. denied sub nom., Illinois Dep't of Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *Bennett,* 989 F.2d at 785.

Windsor contends that Librandi was a fiduciary for purposes of section 523(a)(4) because he was a fiduciary pursuant to the Pennsylvania Securities Act, 70 P.S. § 1–101 et seq., and the regulations promulgated thereunder, 64 Pa.Code § 305.019.[4] A statutory fiduciary under state law is only considered a fiduciary for purposes of section 523 if the statute: (1) defines the trust res; (2) identifies the trustee's fund management duties and authority; and (3) imposes obligations on him prior to the alleged wrongdoing. *In re Christian,* 172 B.R. 490, 495 (Bankr.D.Mass.1994); *In re Baird,* 114 B.R. 198, 202 (9th Cir. BAP 1990). In this case, Librandi was clearly not a statutory fiduciary for purposes of section 523. The Pennsylvania statute does not define the trust res, and in fact precludes registered agents such as Librandi from "acting as a custodian for money...." 64 Pa.Code § 305.019(c)(2). Thus, the Bankruptcy Court correctly concluded that although Librandi was a statutory fiduciary under Pennsylvania law, the same was not true with respect to section 523(a)(4).

Windsor also contends that Librandi was acting in a fiduciary capacity under section 523(a)(4) based on the "special relationship" between the parties. In support of this argument, she identifies a recent line of cases that expand the definition of fiduciary under section 523. In *Sciscoe v. Leistner,* 164 B.R. 86 (S.D.Ind.1993), the court stated that

> the term 'fiduciary', as used in 11 U.S.C. § 523(a)(4) is limited to the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors, or public officers, and, *absent special considerations,* does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners.

*Id.* at 88 (citing *In re Krause,* 114 B.R. 582, 597–98 (Bankr.N.D.Ind.1988)) (emphasis added). Additionally, in *Matter of Marchiando,* the Seventh Circuit indicated that debts are nondischargeable by virtue of section 523(a)(4) when they involve

> either express trusts of a conventional variety or fiduciary relations of the kind just described—relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs.

*Marchiando,* 13 F.3d at 1116. Though not expressly stated by the courts, it appears that these situation create, in their view, "technical trusts".[5]

In the present case, the Bankruptcy Court did not expressly consider whether the "special considerations" or "special relationships" identified in *Marchiando* and *Sciscoe* are present in this action.[6] However, we need

---

**4.** Windsor also contends that the Bankruptcy Court erred in finding that "[t]he record is ambiguous as to whether [Librandi] was a registered securities agent under Pennsylvania law." [Memorandum Opinion at 2]. She claims that it is undisputed that Librandi was a registered agent under the Pennsylvania Securities Act. In fact, Librandi admits that he was a registered agent. [Appellee's Br. at 14]. However, we need not consider this issue since the Bankruptcy Court assumed that Librandi was a registered agent for purposes of its decision. In any event, as set forth below, Librandi was not a statutory fiduciary for purposes of section 523.

**5.** The Third Circuit's only entry into this fray was in *Goldberg v. New Jersey Lawyers' Fund for Client Protection,* 932 F.2d 273 (3d Cir.1991), where the court held that an attorney who was entrusted with client funds, and who misappro-

priated those funds, was acting in a fiduciary capacity for purposes of section 523(a)(4), even though there was not an express trust agreement. The court did not, however, elaborate on its rationale for upholding the lower court's determination that the attorney was acting in a fiduciary capacity. Arguably, the attorney/debtor was both a statutory fiduciary (pursuant to N.J.Ct.R. 1:21–6) and a common law fiduciary (based on the attorney-client relationship). *See In re Goldberg,* 12 B.R. 180, 182 (Bankr.D.N.J. 1981). In *Goldberg,* unlike the present case, the debtor was entrusted with the creditor's property.

**6.** The court did, however, note that the parties' relationship was "of the type inherent in the ordinary commercial relationship between a broker of a non-discretionary account and a client." [Memorandum Opinion at 15].

not determine whether such circumstances existed since Windsor's claim has a fatal defect: there can be no fiduciary relationship for purposes of section 523(a)(4) because there is no trust res.

In every case cited by Windsor in support of her claim, the debtor was entrusted with the creditor's funds. *See, e.g., Goldberg,* 932 F.2d at 278 (debtor/lawyer misappropriated client funds which he was entrusted); *Marchiando,* 13 F.3d at 1116 (debtor failed to submit lottery proceeds); *Quaif,* 4 F.3d at 953 (insurance agent failed to submit insurance premiums); *Bennett,* 989 F.2d at 784 (partner misappropriated partnership funds over which he maintained discretionary control; *Short,* 818 F.2d at 695 (same)); *Bagel,* 1992 WL 477052, at *6 (debtor made fraudulent conveyance of funds that he held as liquidating trustee). Here, however, it is undisputed that Librandi was not entrusted with any of Windsor's funds over which he could exercise discretionary control. Rather, he merely provided investment advice to her, and the checks she endorsed were made out to the funds in which she chose to invest. [Memorandum Opinion at 16].

The court in *In re Evans,* 161 B.R. 474 (9th Cir. BAP 1993) was faced with a nearly identical factual scenario. In that case, the debtor, Evans, was a real estate broker who failed to obtain an option agreement in connection with a sale of land, as requested by her clients. The creditors were the children of Evans' clients, who secured a state court judgment for breach of fiduciary duty against Evans because she was a partner in the group that purchased the land. After Evans filed for bankruptcy, the creditors argued that her debt to them was nondischargeable because she was acting in a fiduciary capacity under section 523(a)(4).

The bankruptcy court concluded that the state court decision established all the elements necessary for nondischargeability under section 523, and therefore invoked the doctrine of collateral estoppel to conclude that the debt was nondischargeable. However, the Bankruptcy Appellate Panel held that although the parties' relationship fell within the broad definition of fiduciary relationship, it was not "an express or technical trust relationship as is required under section 523(a)(4)." *Evans,* 161 B.R. at 478. The court stated that

> [a] trust is defined as a "fiduciary relationship with respect to property, subjecting the person by whom title to the property is held to equitable duties to deal with the property for the benefit of another person...." Restatement (Second) of Trusts § 2 (1959) (emphasis supplied). Thus a requirement of a trust relationship is a trust res—money or property that is entrusted to the debtor-fiduciary. *In re Gans,* 75 B.R. 474, 490 (Bankr.S.D.N.Y. 1987); Restatement (Second) of Trusts § 74 (1959) (trust cannot be created unless there is trust property).

*Id.* The court held, therefore, that because there was no trust res, collateral estoppel based on the state court judgment was not appropriate. *Id.* at 479.

■ Although the procedural posture of the present action differs from *Evans,* the underlying premise of that decision applies with equal force here: general fiduciary obligations are not sufficient to establish a fiduciary relationship under section 523(a)(4) "because of the absence of an express or technical trust relationship with an identifiable res." *Evans,* 161 B.R. at 478. "It is axiomatic that before there can be a trust, there must be a res or particular property entrusted to the fiduciary for the benefit of another." *In re Hamilton,* 147 B.R. 779, 783 (Bankr.D.Colo.1992), *aff'd,* 46 F.3d 1151 (10th Cir.1994). Here, Windsor does not contend that she transferred money or property to Librandi at any time during their relationship. As in *Evans,* there was no trust res, and hence, no express or technical trust within the meaning of section 523(a)(4).

Other courts have reached the same conclusion. In *Matter of Barton,* 465 F.Supp. 918 (S.D.N.Y.1979), the court stated that "the intent of the statute requires, as a threshold, that the [debtor] hold property in trust." *Id.* at 923.[7] Similarly, in *In re Gans,* 75 B.R.

---

7. Although the statute in *Barton* was the predecessor to section 523(a)(4), "the two statutes are similar enough that decisions construing the prior statute are applicable to section 523(a)(4)."

474 (Bankr.S.D.N.Y.1987), the court held that one of the necessary elements under section 523(a)(4) is that "the money or property on which the debt is based must have been *entrusted* to the debtor-fiduciary." *Id.* at 490 (emphasis in original). "[T]his means that there was a 'clear intention' by the parties to create a definable trust *res.*" *Id.* (citations omitted); *see also In re Schneider,* 99 B.R. 974, 977 (9th Cir. BAP 1989) (in creating a trust it is essential that the settlor make property disposition to trustee and divest himself of ownership); *In re Guy,* 101 B.R. 961, 985 (Bankr.N.D.Ind.1988) (section 523 fiduciary capacity "held to connote the idea of trust and confidence, which relationship arises whenever one's property is placed in the custody of another"); *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976) (same).

We have located only one case, not cited by either party, wherein a court held that section 523(a)(4) was applicable in the absence of the entrustment of funds by the creditor to the debtor. In *In re Cochrane,* 179 B.R. 628 (Bankr.D.Minn.1995), the debtor was an attorney who represented the creditors in a real estate transaction. Like the debtor in *Evans, supra,* the attorney in *Cochrane* was a principal in the entity that purchased the real estate. The creditor obtained a state court judgment against the attorney, and argued that it was nondischargeable pursuant to section 523(a)(4). The debtor/attorney argued that he was not acting in a fiduciary capacity under the statute because he was never entrusted with any property by the creditors.

The court rejected that argument, and held that "[s]uch positions of power [an attorney's relationship with his client] do not always involve the deposit of identifiable assets in trust with the attorney. Correspondingly, the professional's fiduciary duty of forbearance is not limited to situations involving segregated, entrusted assets." *Id.* at 634 (citing Janet A. Flaccus, *Attorney Malprac-*

*tice Judgments, Bankruptcy Discharge, and Professional Responsibility,* 4 J.Bankr.L. & Pract. 219, 227 (1995)). It based its decision on the fact that "the concept of 'fiduciary' is broader than the concept of 'trustee under an express trust.'" *Id.* The court further stated that "while a trustee under an express trust is always a fiduciary, a fiduciary need not always be a trustee under an express trust." *Id.* at 634 n. 15.

The decision in *Cochrane* conflicts with a long line of cases that require the establishment of a trust res before section 523(a)(4) can be applied, *see, e.g., Evans,* 161 B.R. at 478–79; *Hamilton,* 147 B.R. at 783; *Gans,* 75 B.R. at 490; *Barton,* 465 F.Supp. at 923, and disregards the Supreme Court's policy to narrowly construe section 523(a)(4). In normal circumstances, the *Cochrane* court's statement that "the concept of 'fiduciary' is broader than the concept of 'trustee under an express trust'" is correct. However, the Court confined the definition of "fiduciary", for purposes of section 523(a)(4), to "technical *trusts*", *Chapman,* 43 U.S. at 208, 11 L.Ed. at 238 (emphasis added), and noted that the debtor "must have been a *trustee* before the wrong...." *Davis,* 293 U.S. at 333, 55 S.Ct. at 154, 79 L.Ed. at 398 (emphasis added).

■ Thus, it is clear that the Court intended "fiduciary capacity", as that term is used in section 523(a)(4), to apply only in those situations that involve a trust, either express or technical. In order to establish a trust, there must be a trust res and equitable title to that res must be transferred to the trustee. *See Hamilton,* 147 B.R. at 783; *Evans,* 161 B.R. at 478 (citing Restatement (Second) of Trusts §§ 2, 74). By permitting a creditor to invoke section 523(a)(4) in the absence of a trust res, *Cochrane* ignores the Supreme Court's limitations on the definition of fiduciary.[8]

■ Additionally, the decision in *Marchiando* is not to the contrary. There, the

---

*Bennett,* 989 F.2d at 784 n. 8 (citation omitted).

**8.** As set forth below, even assuming there was not a trust res requirement, the circumstances in the case at bar do not rise to the level necessary for dischargeability. The decision in *Cochrane*

involved an attorney-client relationship, which differs substantially from the broker-client relationship present here. *See Cochrane,* 179 B.R. at 633 (the relationship between the attorney and the client is "a fiduciary one of the highest trust and confidence").

court stated that debts are nondischargeable under section 523(a)(4) when the parties have "fiduciary relations of the kind just described—relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs." *Marchiando,* 13 F.3d at 1116. However, the "fiduciary relations of the kind just described" were cases that did not involve the application of section 523. *See, e.g., Maksym v. Loesch,* 937 F.2d 1237, 1242 (7th Cir.1991); *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1357 (7th Cir.1990); *Weinberger v. Kendrick,* 698 F.2d 61, 78–79 (2d Cir.1982); *Gratz v. Claughton,* 187 F.2d 46, 49 (2d Cir.1951). Under Windsor's interpretation of *Marchiando,* any fiduciary relation involving inequality between parties falls within section 523, whether there was a trust res or not. Such a result would circumvent the theory behind the narrow construction of section 523(a)(4) set forth in *Chapman* and its progeny, and, in fact, would permit nearly every commercial debtor-creditor relationship to come within the exception. We do not believe that was the court's intention. In any event, insofar as that was the court's intent, we reject that portion of the decision. We conclude that the Bankruptcy Court correctly determined that Librandi's debt to Windsor is not nondischargeable pursuant to section 523(a)(4).[9]

## C. *Exemption*

 The Bankruptcy Court also found that Librandi's residence is held by him and his wife as tenants by the entireties. Windsor contends that the tenancy was severed by a property settlement agreement executed by Librandi and his wife after a complaint in divorce had been filed. However, no settlement agreement, signed by the Librandis,

was entered into evidence. [Memorandum Opinion at 10]. Additionally, the court concluded that Librandi and his wife were never divorced (either legally or *de facto* ), and in fact reconciled in 1992. [Memorandum Opinion at 10].

We may disturb findings of fact only if they are clearly erroneous. After reviewing the evidence and opinion of the Bankruptcy Court, we conclude that its findings of fact are not clearly erroneous, and therefore Windsor's appeal on this issue must be denied.

We will issue an appropriate Order.

---

9. Even assuming Windsor satisfied the trust res requirement, her relationship with Librandi does not contain the requisite "special considerations" that fall within the scope of section 523. Windsor contends that her age, lack of investment skill, and past history of dealing with Librandi are sufficient to establish such a relationship. However, such disparities are present in a large number of circumstances. We believe there must be something more akin to the facts

of *In re Schneider,* 99 B.R. 974 (9th Cir. BAP 1989), where the debtor was a family friend, minister, counsellor, and lover of the creditor, who induced her to surrender funds to him. The facts in this case certainly do not rise to such a level, particularly since the Bankruptcy Court found that Windsor disregarded Librandi's investment advice on "numerous occasions." [Memorandum Opinion at 16].