An order shall be submitted in accordance with this Opinion.

**In re Harold C. LAMPE, Jr., Debtor.**

**Jestyn G. Payne, Custodian for Lauren Lampe, Plaintiff,**

**v.**

**Harold C. Lampe, Jr., Defendant.**

**Bankruptcy No. 08–18025 (JKF). Adversary No. 09–0012.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 14, 2012.

---

Barry W. Sawtelle, Esquire, Kozloff Stoudt, Wyomissing, PA, for the Plaintiff.

Paul J. Winterhalter, Esquire, Corinne Michelle Samler, Esquire, Law Offices of Paul J. Winterhalter, P.C., Philadelphia, PA, for the Defendant/Debtor.

## *ORDER FOLLOWING REMAND*

JEAN K. FITZSIMON, Bankruptcy Judge.

**AND NOW,** this 14th day of August, 2012, this matter having been remanded to this Court by the Honorable Timothy J. Savage of the United States District Court for the Eastern District of Pennsylvania "for further proceedings consistent with the Opinion of the United States Court of Appeals for the Third Circuit," *see* Adversary Proceeding No 09–0012, Docket Entry # 83; *see also Payne v. Lampe (In re Lampe),* 665 F.3d 506 (3d Cir.2011) (hereinafter referred to as the "Third Circuit's Opinion" or the "Opinion");

**AND** the Court having held a status hearing on this matter on May 22, 2012, *see* Adversary Proceeding No. 09–0012, Docket Entry # 89;

**AND** this Court having given the parties until June 6, 2012, to file any findings of fact (from the record of the trial that was held on April 9 and 12, 2010) which they considered relevant to this Court's ruling on remand;

**AND** this Court having given the parties the opportunity to confer with each other to determine whether there was a need for any additional briefing regarding any issues raised by the Third Court's Opinion and, if so, to send an email to the Court regarding the same;[1]

**AND** the parties not having timely filed any findings of fact or sent the Court an email advising it that there were any issues which the parties desired to brief;[2]

**AND** the Third Circuit Opinion setting forth the factual background relevant to this matter, *see Payne,* 665 F.3d at 508–12;

**AND** the plaintiff, Jestyn G. Payne ("Plaintiff"), being the successor custodian

---

1. At the status hearing on May 22, 2012, the Court advised the parties to send an email to chambers if they determined that there was a need for further briefing of any issue to be decided by this Court on remand.

2. On August 1, 2012, the defendant, Harold C. Lampe, Jr. ("Debtor"), filed a document labeled "Debtor's Statement of Remaining Required Scope of Review of Bankruptcy Court Following Remand." Bankruptcy Case No. 08–18025, Docket Entry # 170. Since the Debtor filed this document in contravention of the Court's directions to the parties, it shall not be considered by the Court in rendering its decision herein.

for shares of stock owned by L.L., a minor, under the Pennsylvania Uniform Transfers to Minors Act ("PUTMA"),[2] *see Payne,* 665 F.3d at 508

AND WEL Management, Inc. ("WEL") being a family business in which the Debtor was a director and in which he and L.L. were the only shareholders of record, with the Debtor holding one share of WEL stock and being the custodian for L.L. of her nine shares of WEL stock, *see id.;*

AND the Plaintiff seeking the following relief in this matter: (i) a judgment in his favor and against the Debtor in the sum of $345,000; (ii) an allowed claim in the amount of $345,000 based on the judgment; and (iii) a determination that the Debtor's debt to him (as the successor custodian for L.L.'s stock in WEL) in the amount of $345,000, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the Debtor engaged in fraud or defalcation while acting in a fiduciary capacity,[3] *see* Joint Pretrial Statement at page 13;

### I. The Third Circuit Opinion

AND the Third Circuit having ruled in its Opinion that the Debtor breached the fiduciary duties of care and loyalty which he owed to (i) WEL in his role as a director of that corporation; and (ii) which he owed to his granddaughter, L.L., in his role as the custodian of her nine shares of stock in WEL;

AND the Third Circuit having observed that "the duties owed by a custodian to a minor [pursuant to the PUTMA] track

2. The PUTMA replaced the Pennsylvania Uniform Gifts to Minors Act ("PUGMA"). *See Payne,* 665 F.3d at 520. Although "the transfer to Harold as custodian was recited to be made under the PUGMA," the Third Circuit concluded that the PUTMA applies to the transfer because it was made after the PUTMA's effective date. *Id.* at 520–21 & n. 21.

3. Section 523(a)(4) states as follows:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

those owed by a director to a corporation," *Payne,* 665 F.3d at 521;

AND the Third Circuit, in its analysis of whether the Debtor breached his duty of loyalty to WEL, having declared:

It is clear that Harold by not taking any steps to assist WEL in avoiding a default in a case in which he took actions that resulted in the sheriff's sale of the Reading Avenue property,[4] in the words of *Tyler v. O'Neill, used his "position to obtain ... personal profit or advantage* other than that enjoyed also by their fellow shareholders." 994 F.Supp. at 612. Although WEL may have been indebted to Harold, he contributed to depriving WEL of a substantial asset, perhaps unjustifiably as he acquired the Reading Avenue property for himself to its detriment. Accordingly, Harold breached his duty of loyalty to WEL.

\* \* \*

[A]lthough as we have explained, a director may breach his duty of due care without being unjustly enriched, *a showing of unjust enrichment still may be significant in a case involving a claim of breach of fiduciary duties, particularly when the duty is of loyalty.* A showing of unjust enrichment requires a demonstration that: (1) a benefit was conferred on the defendant; (2) the defendant retained that benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying full value for it. *Schenck v. K.E. David,*

does not discharge an individual debtor from any debt—
    \* \* \*
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]
11 U.S.C. § 523(a)(4).

4. The "Reading Avenue property" is real property which WEL owned on Reading Avenue in Boyertown, Pennsylvania.

*Ltd.,* 446 Pa.Super. 94, 666 A.2d 327, 328 (1995). But there is not a rigid formula that can be applied in a determination of whether there has been unjust enrichment as that determination "depends on the unique factual circumstances of each case." *Safe Auto Ins. Co. v. Berlin,* 991 A.2d 327, 336 n. 6 (Pa.Super.Ct.2010). *In this case, it is clear that by securing the judgment, executing on it, acquiring the Reading Avenue property at the sheriff's sale, reselling the property, and personally taking the proceeds from the resale Harold obtained a benefit that he kept. Considering all the circumstances of this case we are satisfied that it was inequitable for Harold to retain the proceeds from the Reading Avenue property resale in the light of the duty of loyalty that he owed WEL.*

*Payne,* 665 F.3d at 519–20 (emphasis added) (footnote omitted);

**AND** this Court concluding, based on the above-quoted statements that: (i) the Debtor used his position as a director of WEL for his personal benefit; and (ii) the Debtor's retention of the proceeds from his resale of the Reading Avenue property was inequitable;

**AND** the Third Circuit having ruled that the Debtor, as the custodian of L.L.'s shares of stock in WEL, "had not only a duty to look after the shares themselves, but also not to do anything that would reduce their value to L.L.'s detriment," *Payne,* 665 F.3d at 522;

**AND** the value of WEL's stock having been reduced when the Debtor executed on the Reading Avenue property and kept the proceeds from the resale of such property for himself;[5]

**AND** the Debtor, therefore, having "effectively appropriated L.L.'s assets" when he "acquired and sold the Reading Avenue property," *id.* at 523;

**AND** the Third Circuit explaining, in more detail, that the Debtor's appropriation of L.L.'s property involved each of the following steps: (1) suing WEL; (2) failing to take any action on behalf of WEL to defend against the suit which he filed against it; (3) commencing execution proceedings against the Reading Avenue property; (4) purchasing the Reading Avenue property at a sheriff's sale; and (5) reselling the Reading Avenue property and retaining the proceeds from the resale for himself,[6] *see Payne,* 665 F.3d at 523;

## II. Judgment Against the Debtor

[1] **AND** the Plaintiff, therefore, being entitled to a judgment against the Debtor for breaching his custodial duty of loyalty to L.L.;

**AND** the Debtor having owned one share of stock in WEL and having been the custodian for L.L.'s nine shares of stock in WEL which means that the Debtor is liable for ninety percent (90%) of the decrease in WEL's assets caused by his actions as hereinbefore stated;

**AND** the Plaintiff having advised the Court at the status hearing on May 22,

---

5. The Third Circuit reasoned that the Debtor appropriated L.L.'s property when he reduced the value of WEL since the reduction in WEL's value directly affected "the value of L.L.'s shares in that corporation." *Payne,* 665 F.3d at 522 (Since "shares of stock cannot be viewed as simply sheets of paper or notations on computer records ... [the Debtor] had not only a duty to look after the shares themselves, but also not to do anything

that would reduce the value to L.L.'s detriment.")

6. Regarding these five steps, the Third Circuit stated: "Though [the Debtor] well may have been justified in instituting his action against WEL, *clearly* he breached his custodial duty of loyalty to L.L. by his actions with respect to the other four steps involved in his appropriation of the property." *Payne,* 665 F.3d at 523 (emphasis added).

2012, that he agreed to having the amount of the judgment entered against the Debtor being equal to ninety percent (90%) of his net proceeds of the sale of the Reading Avenue property assuming that the deductions ("Deductions") from the sale price were for customary and ordinary expenses (*i.e.*, the amount of the judgment is $345,000 minus the total amount of such charges as transfer tax, a real estate commission, etc.) since WEL would have similarly incurred these expenses in connection with a sale of the property; [7]

**AND** the Settlement Statement from the Debtor's sale of the Reading Avenue property indicating that the Debtor received $341,275.00 in proceeds from the sale after the sale price of $345,000 was reduced by Deductions for costs and expenses in the amount of $3,724.00, *see* Defendant's Trial Exhibit # 28;

**AND** the record not containing evidence regarding any additional Deductions (*e.g.*, real estate commissions) which the Debtor was required to pay in connection with the resale of the Property;

**AND** the Court, therefore, granting the Debtor ten days from the date hereof to file documentation (and serve such documentation upon opposing counsel) regarding any additional Deductions which he paid in connection with the resale of the Property that reduced his net profit therefrom.[8] In the event the Court finds the documentation to be sufficient and the Deductions to be appropriate, then the amount of the Deductions will be subtracted from $341,275.00 and a judgment shall be entered against the Debtor for ninety percent (90%) of such decreased amount. If the Debtor fails to timely file such documentation, then a judgment in the amount of $307,145.50 (which is 90% of $341,275.00) shall be promptly entered against him;

### III. Section 523(a)(4)

### (a) Fiduciary Capacity within the Meaning of § 523(a)(4)

█ **AND** the term "fiduciary capacity" having a narrower meaning under

---

7. The Third Circuit specifically noted that the Bankruptcy Court concluded that the Debtor was " 'validly owed' some money by WEL," but stated that this conclusion only "underscore[d] the existence of his conflict of interest." *Payne*, 665 F.3d at 522–23. Furthermore, the Third Circuit ruled that the Debtor breached his fiduciary duty as the custodian of L.L.'s stock in WEL when he unjustifiably failed to take "steps on behalf of WEL to defend against" his suit against it. *Id.* at 523. Having breached his fiduciary duty by obtaining the default judgment, the Debtor should never have commenced execution proceedings based on the judgment, should not have purchased the Reading Avenue property and should not have retained the proceeds from his resale of it. *Id.* Consequently, though the Debtor may have been owed money by WEL, that fact is irrelevant in determining the amount which the Debtor owes the Plaintiff for breaching his fiduciary duty. The damages which he owes to Payne are ninety percent (90%) of the net proceeds from the resale of the Reading Avenue property since that is

the amount of the damage which he caused to L.L. by breaching his fiduciary duty.

Furthermore, the Third Circuit held that, even accepting this Court's finding that the Debtor had a good faith basis for alleging that WEL should be held liable for his loans to PCI–2 and that he had "reasonable grounds" for asserting his claims in state court against WEL, "these findings are not dispositive because they do not establish that WEL could not have successfully advanced a defense to Harold's claim." *Id.* at 518 n. 17. The Third Circuit also noted that "the shortfall" in this Court's finding is that it was not established that "PCI–2 and WEL were alter egos." Indeed, the record before this Court was insufficient to support a finding or legal conclusion that PCI–2 and WEL were alter egos.

8. The Plaintiff shall have five days, from the date upon which the Debtor files his documentation, to file a response disputing the sufficiency of such documentation and/or objecting to the Deduction(s).

§ 523(a)(4) than its traditional common law meaning, *see Estate of Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 777 (Bankr. E.D.Pa.2004);

■ **AND** the term "fiduciary capacity" under § 523(a)(4) requiring that the debtor must have been acting as a trustee of an express or technical trust when he or she committed fraud or defalcation, *Michener v. Brady (In re Brady)*, 243 B.R. 253, 259 (E.D.Pa.2000);

■ **AND** case law recognizing that a technical trust can include " 'relationships in which trust type obligations are imposed pursuant to statute or common law,' " *see Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (M.D.Pa.1995) (*quotingLSP Investment Partnership v. Bennett (In re Bennett)*, 989 F.2d 779, 784–85 (5th Cir. 1993));

■ **AND** the relationship that is created under the PUTMA (or its predecessor the PUGMA) between the custodian and a minor being a fiduciary one, *see Sutliff v. Sutliff*, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987);

**AND** a relationship which is created by statute only being considered a fiduciary one for purposes of § 523(a)(4) "if the statute: (1) defines the trust res; (2) identifies the trustee's fund management duties and authority; and (3) imposes obligations on him prior to the alleged wrongdoing," *Windsor*, 183 B.R. at 383;

**AND** the PUTMA defining the trust res as "[a]ny interest in property transferred to a custodian under this chapter and the income and proceeds of that interest in the property," 20 Pa.C.S.A. § 5301;

**AND** the PUTMA specifically setting forth the custodian's duties and imposing a standard of care thereon prior to the alleged wrongdoing, *see* 20 Pa.C.S.A. § 5312(a) & (b);

**AND** the fiduciary relationship created by the PUTMA, therefore, satisfying the requirements for a fiduciary under § 523(a)(4); *see Tritter v. Corry*, 69 F.3d 531, 1995 WL 648252, at *2 (1st Cir. Nov. 6, 1995) (unpublished, text on Westlaw) (ruling that the debtor "became a fiduciary for purposes of § 523(a)(4) when the account [for his daughter] was established under the UGMA, naming him as custodian."); *Johns v. Johns (In re Johns)*, 181 B.R. 965, 970–71 (Bankr.D.Ariz.1995) (concluding that the debtor, who was the custodian over various bank accounts which were established for the benefit of his son under the Arizona Uniform Transfers to Minors Act, was acting in a fiduciary capacity for purposes of § 523(a)(4) when he used the funds in the account for himself instead of his son);

**(b) Defalcation**

**AND** the Bankruptcy Code not defining the term "defalcation," *Chao v. Rizzi*, 2007 WL 2317335, at *2 (W.D.Pa. Aug.8, 2007);

**AND** there being three points of view among the courts regarding the type of conduct necessary for "defalcation," *see In re Tyson*, 450 B.R. 514, 525 (Bankr. E.D.Pa.2011);

**AND** the three points of view being the following: (i) even an innocent mistake by a debtor acting in a fiduciary capacity can constitute defalcation; (ii) defalcation requires negligent conduct on the part of a fiduciary; and (iii) defalcation requires reckless conduct by a fiduciary, *see In re Tyson*, 450 B.R. at 524–25 (*citing* 4 Collier on Bankruptcy ¶ 523.10[1][d], at 523–72 (16th ed. 2010) (footnotes omitted)); [9]

---

**9.** As set forth in *In re Tyson*, the "Fourth, Eighth and Ninth Circuits follow the 'innocent mistake' line of cases[,]" the Tenth Circuit "appears to require that the debtor act negligently[,]" and the "First, Second, Fifth, Sixth and Seventh Circuits require either

AND the Third Circuit Court not having addressed the issue as to the standard of conduct necessary for defalcation, *see Collier v. Goepp (In re Goepp)*, 455 B.R. 388, 398 n. 3 (Bankr.D.N.J.2011);

AND the lower courts of this circuit reaching divergent conclusions on the aforementioned issue; *see Jou v. Adalian*, 474 B.R. 150, 161 (Bankr.M.D.Pa.2012) (innocent default by fiduciary constitutes defalcation under § 523(a)(4)); *Goepp*, 455 B.R. at 398 n. 3 (Bankr.D.N.J.2011) (for purposes of rendering its decision, assuming, without deciding, "that defalcation requires a level of intent beyond negligence."); *Chao*, 2007 WL 2317335, at *3 (concluding that defalcation cannot be based on mere negligent conduct or an innocent mistake and, instead, requires "some showing of affirmative misconduct"); *see In re Tyson*, 450 B.R. at 525 (ruling the "defalcation under § 523(a)(4) requires some type of fiduciary misconduct beyond a showing of mere innocent mistake" but declining to "define the scienter standard with any greater precision");

AND the Third Circuit having concluded that the Debtor "*clearly* breached his custodial duty of loyalty to L.L." and having pointedly stated that "he violated his duty of loyalty to L.L. by his *self-dealing actions* " and that it was "inequitable" [10] for him to retain the proceeds from the Reading Avenue property; *Payne*, 665 F.3d at 520, 523;

AND the Debtor having *known* that he was the custodian for L.L. of her nine shares of stock in WEL when: (i) execution proceedings were commenced on his behalf against the Reading Avenue property; (ii) he acquired the property at the sheriff's sale; and (ii) he retained the proceeds of the resale of such property; *Payne v. Lampe (In re Lampe)*, 444 B.R. 140, 158 (Bankr.E.D.Pa.2010) ("The Debtor knew he was the custodian for [L.L.] of nine shares of stock in WEL before execution proceedings were commenced on his behalf against the Reading Avenue Property in March of 2005."), *rev'd on other grounds*, 665 F.3d 506 (2011);

AND the Debtor, despite his knowledge, having engaged in the aforesaid intentional and self-serving actions which reduced the value of L.L.'s shares in WEL;

AND this Court, therefore, concluding that the Debtor's conduct, rather than being an innocent mistake or mere negligence, constitutes a more intentional, culpable type of conduct (albeit not fraudulent or malicious) [11] which satisfies the requirement for "defalcation" under § 523(a)(4) such that the Debtor's debt to Payne, as the successor custodian for L.L. of her nine shares of stock in WEL, shall be held nondischargeable; [12]

---

reckless or extreme reckless conduct before defalcation by a fiduciary gives rise to a nondischargeable claim." 450 B.R. at 525 (citations omitted).

10. Although the Third Circuit's statement that it was "inequitable" for the Debtor "to retain the proceeds of the Reading Avenue property resale" was made in its discussion of the Debtor's breach of his duty of loyalty to WEL, the Third Circuit explicitly stated:
The PUTMA also imposes a duty of loyalty: "A custodian may not use PUTMA property to benefit himself." Thus, the duties owed by a custodian to a minor *track* those owed by a director to his corporation.

*Payne*, 665 F.3d at 521 (citation omitted).

11. The Debtor did not act fraudulently or maliciously. However, he acted intentionally and with knowledge that his actions would benefit him while detrimentally affecting the value of L.L.'s stock in WEL. As the Third Circuit aptly pointed out, the Debtor acted "at the expense of L.L. and she was not the *cause* of his problems." *Payne*, 665 F.3d at 524 n. 27 (emphasis added).

12. The Third Circuit opined that the Debtor should have taken action to ensure that L.L.'s interests in her stock in WEL were "represented at the sheriff's sale of the Reading

It is hereby **ORDERED** and **DE-CREED** that:

(1) Plaintiff is entitled to judgment in his favor and against the Debtor on the Amended Complaint.

(2) The Debtor's debt to Payne is non-dischargeable;

(3) The Debtor shall have ten days from the date hereof to file documentation (and serve such documentation upon opposing counsel) regarding any additional Deductions which he paid in conjunction with the resale of the Reading Avenue property. The Plaintiff shall have five days thereafter to file a response disputing the sufficiency of the documentation and/or the appropriateness of the Deduction(s). In the event the Court finds the documentation to be sufficient and the Deductions to be customary and ordinary expenses incurred in the sale of property, then the Deduction(s) shall be subtracted from $341,275.00 and a nondischargeable judgment shall be entered against the Debtor for ninety percent (90%) of such decreased amount. If the Debtor fails to timely file such documentation or the Court concludes that such documentation is insufficient or the Deductions were not customary and ordinary expenses, then a nondischargeable judgment in the amount of $307,145.50 (which is 90% of $341,275.00) shall be promptly entered against the Debtor; and

(4) The Debtor's objection to the Plaintiff's proof of claim is DENIED.

Avenue property." *Payne,* 665 F.3d at 517. In the alternative, the Debtor could have also resigned as the custodian of L.L.'s shares before executing on the property. *See* 20 Pa.C.S.A. § 5318(b) & (c). Choosing to resign would have been the prudent decision.