In re Wayne Franklin LANG, Debtor.

Dennis and Theresa STAHL, Plaintiffs,

v.

Wayne Franklin LANG, Defendant.

Bankruptcy No. B88–4705.
Adv. No. B89–100.

United States Bankruptcy Court,
N.D. Ohio, E.D.

Dec. 6, 1989.

588

John D. Falgiani, Jr., Austintown, Ohio, for plaintiffs.

Mary Ann Rabin, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this adversary proceeding Plaintiffs Dennis and Theresa Stahl seek to have their investments in certain limited partnerships declared nondischargeable debts of Wayne Franklin Lang (Debtor). The Debtor filed his petition in bankruptcy on December 13, 1988. Jurisdiction of this matter is conferred on this Court under 28 U.S.C. § 1334 and General Order No. 84 of this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Plaintiffs' objection is premised on sections 523(a)(2), (a)(4) and (a)(6) of the Bankruptcy Code. Following a trial of this matter, arguments of counsel and an examination of the evidence admitted, the following constitutes the Court's findings and conclusions:

### I.

Plaintiffs have been acquainted with the Debtor for approximately 15 to 20 years. In 1985 and 1986, Plaintiffs retained the Debtor to perform accounting and tax preparation services. The Debtor had also performed these services for the Plaintiffs in previous years. In the course of tax preparation in 1985, Dennis Stahl asked the Debtor about establishing an I.R.A. account. The Debtor then aided Plaintiff in setting up an I.R.A. account for $2,000.00 with First Trust Corporation as Trustee (See DX G) and suggested that his I.R.A. be used to purchase a one-half unit in West Court Apartments Ltd. partnership (West Court). Both the I.R.A. adoption agreement and the I.R.A. investment authorization were executed and signed by Dennis Stahl on April 11, 1985. (*Id.*)

The following year Theresa Stahl set up a similar I.R.A. with First Trust in the amount of $3,000.00 ($2,000.00 for a contribution for 1985 and $1,000.00 for 1986). (*See,* DX H.) At Debtor's suggestion, the $3,000.00 was used to purchase one share in Hahira Georgia Motel Ltd. partnership (Hahira). The Debtor was a general partner in both of these partnerships. These I.R.A. contributions and subsequent investments are the subject of this adversary proceeding.

### II.

Plaintiffs claim that they were induced to make these I.R.A. contributions in reliance on the Debtor's fraudulent representations that the investments were without risk and would be highly profitable. They also allege that the Debtor further failed to disclose his conflicts of interest resulting from his position as a general partner for these and other real estate limited partnerships as well as the fact that he received monetary compensation from the partnerships.

The Debtor contends that he did not defraud the Plaintiffs, that all risks and potential conflicts of interest were described in the offering circulars of both partnerships and were fully disclosed to the Plaintiffs.

11 U.S.C. § 523(a)(2)(A) excepts from discharge debts for money, property, services.... to the extent obtained, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's.... financial condition....

The elements of § 523(a)(2)(A) are: (1) that the claimed representations were made; (2) that at the time they were made the debtor knew they were false; (3) that they were made with the intention and purpose of deceiving plaintiffs; (4) that plaintiffs reasonably relied on such representation having been made. *In re Hospelhorn*, 18 B.R. 395, 397–98 (Bankr.S.D.Ohio 1981). A creditor seeking an exception from discharge under § 523(a)(2) must sustain this burden by clear and convincing evidence. *In re Phillips*, 804 F.2d 930 (6th Cir.1986). Respecting their allegations under § 523(a)(2), Plaintiffs have failed to meet their burden. First, no clear and convincing evidence has been demonstrated to show that debtor obtained property by false pretenses or a false representation. Even if Plaintiffs are correct in asserting that debtor represented that the investments in the limited partnerships were risk-free, a claim of this nature appears to be in the nature of "puffery" and should not be the basis of reasonable reliance. *See, In re Stone*, 91 B.R. 589, 592 (D.Utah 1988). Further, while testimony is not conclusive as to whether the Plaintiffs were told of the risks and were actually shown the offering circulars in which the risks and conflicts of interest were clearly described, Plaintiffs did sign an I.R.A. Investment Authorization authorizing First Trust to purchase the units in their behalf. (DX G & H).

As to actual fraud, § 523(a)(2)(A) includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality. *In re Black*, 787 F.2d 503, 505 (10th Cir.1986); *In re Novak*, 97 B.R. 47, 56 (Bankr.D.Kan.1987). In this case Plaintiffs presented no evidence of any actual fraud on the part of the Debtor that would have caused them to invest in either the West Court or the Hahira partnerships.

Plaintiffs next contend that the debt to them should be excepted from discharge under § 523(a)(4), which refers to fraud or defalcation committed when a debtor is acting in a fiduciary capacity. The threshhold determination which must be made is whether the debtor was actually acting in a fiduciary capacity within the meaning of the statute. While state law is important in determining when a trust relationship exists, the issue is ultimately a federal question. *See, In re Short*, 818 F.2d 693 (9th Cir.1987); *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982). Here the offering circulars for both West Court and Hahira speak of the fiduciary duties owed by the general partners to the limited partners. The broad, general definition of fiduciary, involving confidence, trust and good faith, is inapplicable in a dischargeability context, thus excluding ordinary commercial relationships from the meaning of fiduciary under the Bankruptcy Code. *In re Schultz*, 46 B.R. 880 (Bankr.D.Nev.1985); *In re Angelle*, 610 F.2d 1335, 1338 (5th Cir.1980).

The term "fiduciary" applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Johnson, supra*, at 251. Plaintiffs rely on the fact that Debtor, as a general partner, was a fiduciary with respect to any limited partners in West Court and Hahira. Plaintiffs also rely on Debtor's appointment as attorney-in-fact, pursuant to the written subscription agreements. Both the partnership relationship and the attorney-in-fact relationship arose from ordinary commercial transactions and not from any technical, express, or statutorily imposed trust. As discussed above, these types of relationships do not impose a fiduciary duty that would subject Debtor's actions to liability under § 523(a)(4). Thusly, the Plaintiffs' contentions under § 523(a)(4) must fail.

■ Finally, Plaintiffs assert that Lang's debt to them should be excepted from discharge under § 523(a)(6), which operates to make nondischargeable any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Conversion of another's property will give rise to a nondischargeable debt under § 523(a)(6) if the conversion is willful and malicious. *In re Pommerer*, 10 B.R. 935 (Bankr.D.Minn. 1981); *In re Schmehl*, 57 B.R. 546, 14 B.C.D. 1 (Bankr.N.D.Ohio 1986). The terms are defined in the Sixth Circuit decision *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). In that case, the Court of Appeals held that "willful" means a deliberate and intentional doing of an act that necessarily leads to injury. In defining "malicious," the *Perkins* court accepted the definition in 3 *Collier on Bankruptcy*, ¶ 523.16 at 523–11 (15th ed. 1986):

> An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will.

■ Consequently, a creditor need not show a specific intent to injure, but rather that intent may be inferred by the nature of the act. If an intentional act necessarily produces harm and is without just cause or excuse, it is willful and malicious even absent proof of an intent to injure. *Perkins* at 394; *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *In re Franklin*, 726 F.2d 606, 610 (10th Cir.1984). It is the intent to do the act which is the operative legal event and not the intent to do harm. *In re Nuckols* 47 B.R. 731, 735, 12 B.C.D. 1125 (Bankr.E.D.Va.1985); *In re Guy*, 101 B.R. 961, 982 (Bankr.N.D.Ind. 1989).

■ Here, the Debtor deliberately placed Plaintiffs' I.R.A. savings in a high-risk investment. The Debtor was personally well-acquainted with Plaintiffs and with their financial situation. Plaintiffs testified that they wished to place their money in an investment without risk (Dennis Stahl, Direct exam; Theresa Stahl, Direct

exam). This testimony was unrefuted. Both Plaintiffs stated that if they had known of the risks they would not have made the investments in West Court and Hahira. (*Id.*) The risk factors are set forth in the offering circular and include: changes in law and government regulations, general or local economic conditions, interest rates and other operating expenses, rent collection difficulties, vacancies, abilities of the property manager, limited net worth of the general partners, and potential conflicts of interest resulting from the fact that the general partners own the management company which manages the property and also have possibly conflicting interests in other properties. (PX–7, pp. 5–7).

The offering circulars and subscription agreements clearly set forth the suitability requirements for a subscriber in the partnerships. The West Court circular contains the following suitability standards:

> The purchase of these limited partnership units involves certain risks and is suitable only for persons of adequate means who have no need for liquidity in their investments.... The limited partnership units are not readily marketable and of a long-term nature. Only persons whose income is subject to high rates of federal income taxation will derive the full economic benefits expected to be realized by the Partnership in its early years of operation. Interests will be sold only to a purchaser who has either (a) a minimum annual gross income of Thirty Thousand Dollars ($30,000.00) and a net worth (excluding from computation thereof his home, home furnishings and personal automobiles) of not less than Thirty Thousand Dollars ($30,000); or (b) a net worth (as computed above) of not less than Seventy–Five Thousand Dollars ($75,000).... The General Partners require that each limited partner have sufficient business experience and knowledge to evaluate the merits and the risks of purchasing the offered limited partnership units. The selling broker-dealer will make reasonable inquiry to assure that there is compliance with these suitability standards. The General Partners

will not accept subscriptions from any person who does not represent in the Subscription Agreement that he has such business knowledge or experience unless the subscriber requests that his representative be furnished with this offering circular. The General Partners will rely upon the representations of the subscriber in the Subscription Agreement.

The net worth standard for Hahira is identical to that of West Court. The subscriber, either alone or together with a Purchaser Representative, should have knowledge and experience in nonmarketable, tax-incentive investments and should have no need for liquidity. (PX 8, p. 2). The investor should also have such knowledge and experience in business and financial matters in general and be capable of evaluating the merits and risks of purchasing the units unless the subscriber represents that he, together with any purchaser representative such as an attorney, accountant, or tax advisor, has such business knowledge and experience and requests that his purchaser representative be furnished with a copy of this offering circular. The General Partners rely on the representations made by the subscriber in his Subscription Agreement. (*Id.*, pp. 5–6).

Plaintiffs clearly did not meet these suitability standards. Based upon the Debtor's long-standing familiarity with the Stahls, he knew they did not meet the above standards. As to their net worth, testimony was conflicting as to whether their annual income was in excess of $30,000.00, but it was unrefuted that their net worth was less than $30,000.00. Under "(a)" of the *financial requirements*, this standard is in the conjunctive; both prongs must be met to demonstrate suitability. In any event, they were not in a sufficiently high tax bracket to benefit from the tax advantages available to high income investors prior to 1986. Their money, when placed in an I.R.A. account, was already sheltered. There was no justifiable tax reason to place the Stahls' funds in a real estate limited partnership both because any· profit was already sheltered in the I.R.A.s and they

otherwise were incapable of writing off any losses of a partnership against their taxes. (Direct EX., Sara Robechek, Expert Witness). Debtor was both the Account Executive and the Financial Planner for Plaintiffs at the time of their investment. (DX D, DX F). The West Court circular contains the following language: "Each potential investor is strongly urged to consult his own tax advisor concerning the effects of Federal Income Tax law and regulations on his investment in the Partnership and on his individual tax situation." (PX 7, p. 8). Even though transfer of Plaintiffs' money from an I.R.A. to high risk illiquid, nonmarketable partnerships was clearly in derogation of Plaintiffs' express goal of a risk-free retirement plan, the Debtor put the whole investment scheme in motion, thereby intentionally performing an act that necessarily invited injury. Malice may be shown by a debtor's knowledge that his act will harm a creditor and the Debtor's nontheless proceeding in the face of that knowledge. *In re Dorman*, 98 B.R. 560 (Bankr.D.Kan.1987). This presentation of malice occurred in the present case.

Both Plaintiffs' Subscription Agreements were submitted by First Trust Corp. on behalf of the Plaintiff and were accepted by the General Partners. (PX 2 & 3). Both Plaintiffs testified that they had never seen the Subscription Agreement until a few days prior to trial. These agreements were dated 1984 and 1986, respectively. The Agreements indicated that Plaintiffs conform to the suitability requirements, have knowledge and experience in·financial matters and are able to evaluate the risks. (*Id.*) In reality, both Plaintiffs are unsophisticated investors, did not understand the risks, and relied upon their tax advisor and long-time acquaintance Wayne Lang to make an appropriate investment for them.

Plaintiffs' testimony was credible. Theresa Stahl has been a homemaker for 26 years and used money from an inheritance to establish her I.R.A. and wished to preserve it for the use of a retarded daughter.[1] Notwithstanding the Debtor's inti-

---

1. It is questionable whether she was eligible to invest in an I.R.A. in that, pursuant to 26 U.S.C.

mate knowledge of Plaintiffs' ability and finances, he induced them to invest in purported tax sheltered limited partnerships, rather than the needed and requested I.R. A.s for retirement purposes. While testimony is disputed as to whether Plaintiffs were informed of the risks, one can look beyond the testimony to the documentary evidence which reveals the inappropriateness of these investments for the Plaintiffs.

### III.

Plaintiffs have failed to demonstrate that the Debtor violated § 523(a)(2)(A) by obtaining money, property or services by false pretenses, a false representation or actual fraud. They have also failed to demonstrate that Debtor was a fiduciary within the meaning of § 523(a)(4). They have demonstrated, however, by clear and convincing evidence, that Debtor willfully and maliciously caused Plaintiffs' I.R.A.s to be converted into high risk limited partnerships knowing that harm would in all likelihood result. Accordingly the debts that are the subject of this adversary in the amount of $5,050.00 are nondischargeable.

IT IS SO ORDERED.