In re Ralph J. TAYLOR and Deborah L. Taylor, Debtors.

GRIFFITH, STRICKLER, LERMAN, SOLYMOS & CALKINS, Plaintiff,

v.

Ralph J. TAYLOR, Defendant.

Bankruptcy No. 1–95–01860.
Adv. No. 1–95–00350A.

United States Bankruptcy Court,
M.D. Pennsylvania.

May 16, 1996.

Taylor in the amount of $9,229.05, by virtue of certain mechanics' lien claims, which arose in connection with Taylor's former ownership of the certain liened properties. Griffith alleges that, during settlements on separate sales of the properties, at which times Griffith acted as title agent, Taylor executed a written affidavit containing provisions stating that there were no mechanics' liens filed against the properties and that he was unaware of any outstanding mechanics' liens which might be filed against the properties. Griffith alleges that it completed the settlements acting upon Taylor's representation. Griffith further alleges that, subsequent to the settlements, various subcontractors asserted mechanics' lien claims for labor and/or materials provided in the construction of improvements on the properties. Griffith alleges that it remitted monies to satisfy all or part of the mechanics' lien claims and took assignments of all or part of such claims.

On January 18, 1996, Taylor filed a motion to dismiss. The parties subsequently filed briefs, and the matter is ready for decision.

Lawrence V. Young, York, PA, for plaintiffs.

Steven M. Carr, York, PA, for defendant.

### *MEMORANDUM*

ROBERT J. WOODSIDE, Chief Judge.

Before me is the motion of debtor/defendant Ralph J. Taylor ("Taylor"), seeking dismissal of an adversary complaint filed by creditor/plaintiff Griffith, Strickler, Lerman, Solymos & Calkins ("Griffith"). For the reasons stated below, the relief requested in the motion will be denied.

### *Procedural and factual background*

Debtor/defendant Ralph J. Taylor ("Taylor") filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 15, 1995. On December 21, 1995, Griffith filed the instant adversary proceeding, seeking a determination of nondischargeability under Section 523(a)(2), (4) and (6) of the Bankruptcy Code.

In its Complaint, Griffith alleges that it is a law firm and the holder of a claim against

### *Discussion*

In deciding a motion to dismiss brought pursuant to Fed.R.Bankr.P. 7012, incorporating Fed.R.Civ.P. 12(b)(6), I must treat the facts alleged in the complaint as true; construe the complaint in the light most favorable to the non-moving party, drawing all reasonable inferences that can be drawn therefrom in favor of the non-moving party; and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). A motion brought pursuant to Fed.R.Civ.P. 12(b)(6) will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449–50 (M.D.Pa.1991) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

A. *Section 523(a)(2)(A)*

Section 523(a)(2)(A) states in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In order to state a claim under Section 523(a)(2)(A), a creditor must allege: (1) the debtor made a materially false representation; (2) that at the time made, the debtor knew it to be false; (3) that the debtor made the representation with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on the false representation; and (5) that the creditor sustained a loss as a result of its reliance. *In re Kaplan,* 162 B.R. 684, 701–02 (Bankr. E.D.Pa.1993) (as modified by *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 438, 133 L.Ed.2d 351 (1995)), *aff'd,* 189 B.R. 882 (E.D.Pa.1995); *In re Sutliff,* 112 B.R. 680, 682 (Bankr.M.D.Pa.1990). Like the other exceptions to discharge enumerated in Section 523 of the Bankruptcy Code, Section 523(a)(2)(A) is to be construed narrowly in favor of dischargeability, *In re Segal,* 57 F.3d 342, 346 (3d Cir.1995), and the creditor bears the burden of proof by a preponderance of the evidence. *In re Graham,* 973 F.2d 1089, 1101–02 (3d Cir.1992) (citing *Grogan v. Garner,* 498 U.S. 279, 289–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)).

Taylor contends first that he did not receive any money or property from Griffith; therefore, any debt owing to Griffith cannot be said to have been "obtained by" fraud on his part. While Taylor has cited case authority to support his contention, *see In re Grubbs,* 9 B.R. 499, 501 (M.D.Ga.1981), courts more recently have held generally that:

§ 523(a)(2)(A) does not require that a debt excepted from discharge be one for property acquired *by the debtor* or credit extended *to the debtor.* Courts generally conclude that when a debtor, through fraud, obtains some benefit, albeit an "attenuated" one, from property or credit provided to a third party, he or she may not evade nondischargeability by claiming that he or she did not *directly* receive the benefit of the transaction. *See, e.g., Ashley v. Church (In re Ashley),* 903 F.2d 599, 604 (9th Cir.1990). Others have held that § 523(a)(2)(A) may operate on a fraudulent debtor's liability even when he or she received *no* benefit. *See Central Finance Co. v. Carroll (In re Carroll),* 16 B.R. 494 (D.Minn.1982).

*In re Baietti,* 189 B.R. 549, 556 (Bankr.D.Me. 1995) (emphasis in original); *see generally In re Bozzano,* 173 B.R. 990, 992 (Bankr. M.D.N.C.1994) (stating that Section 523(a)(2)(A) "has been interpreted to make nondischargeable the loss or damage sustained by a creditor as a result of being induced into virtually any type of business transaction by fraud, false representations or false pretenses on the part of the debtor").

Here, Griffith alleges circumstances by which Taylor secured satisfaction of his liability to his subcontractors/materialmen, i.e. a benefit, by virtue of Griffith's payment. Additionally, the tenor of Griffith's complaint is that, based upon false representations, Taylor was able to secure a sale of real property and the associated proceeds of the sale, subjecting the purchasers to liabilities in the form of mechanics' lien claims (against which the purchasers insured themselves). On behalf of the purchasers, Griffith satisfied those liabilities, and, to the extent Griffith is proceeding in a capacity as subrogor on the purchaser's claims against Taylor, Griffith is proceeding in the shoes of a party from whom Taylor obtained money by means of the alleged fraud. Accordingly, it cannot be said, as a matter of law, that there is no set of circumstances under which Griffith may prevail pursuant to Section 523(a)(2)(A).[1]

---

1. Griffith also alleges that it obtained a written assignment of the claims of the subcontractors/materialmen it paid. I note, however, that there is no allegation that services and materials were procured by fraud; therefore, to the extent Griffith is proceeding in the shoes of the subcon-

My determination that dismissal of the Section 523(a)(2)(A) claim is not appropriate is supported by the Eighth Circuit's decision in *In re Dallam*, 850 F.2d 446 (8th Cir.1988). There, the debtor, in the business of constructing residences, before closing on one of her properties, delivered to the title insurer an affidavit stating that all persons furnishing services, labor or materials used in the construction "have been paid in full, that there are no mechanics' or materialmen's liens against said property and no claim outstanding which would entitle the holder thereof to claim a lien against the property." *Dallam*, 850 F.2d at 446. Partly in reliance on the affidavit, the title insurer issued insurance related to the property. Subsequently, fifteen contractors submitted claims to the purchasers of the residence. The title insurer brought an adversary proceeding seeking both to recover from the debtor the money it paid to settle those claims and a determination that the debts were nondischargeable pursuant to Section 523(a)(2)(A). In reversing the district court's affirmance of the bankruptcy court's decision to dismiss the Section 523(a)(2)(A) claim, the Eighth Circuit stated as follows:

> We conclude that [the title insurer] produced evidence establishing fraud and a nondischargeable debt under 11 U.S.C. § 523(a)(2): [the debtor] obtained payment of her business' debts by knowingly making a false statement in order to induce [the title insurer's] reliance on the statement, and [the title insurer's] reliance on the statement caused it to lose money. The lower courts erred in holding the complaint should be dismissed.

*Dallam*, 850 F.2d at 449; *see also In re Pontier*, 165 B.R. 797, 801 (Bankr.D.Md. 1994) (denying motion to dismiss claims brought by homeowner under Section 523(a)(2)(A), (4) and (6), where complaint alleged that debtor/contractor and his corporation fraudulently represented that construction work was substantially complete).

■ Taylor also contends that Griffith's Complaint fails to allege that he knew his alleged misrepresentations were false.

While such may be true from a technical reading of Count I of the Complaint, certainly the averments contained in Count III of the Complaint suffice to clarify Griffith's intentions with regard to pleading knowledge of falsity. *See* Complaint ¶ 22 (stating that "Defendant intentionally and falsely represented that [assertion of mechanics' liens claims] would not occur"). Moreover, Taylor's affidavit as attached to the Complaint is not a guarantee that no mechanics' liens actually were or could be filed, but merely his attestation that, to the best of his knowledge and belief, none were or could be filed. The affidavit, therefore, could only be false if Taylor actually was aware of actual or potential mechanics' liens (or of other circumstances particularly identified in the affidavit).

Taylor also contends that "reasonable reliance" is a requirement under Section 523(a)(2)(A), that the Complaint fails to allege such reasonable reliance on the part of Griffith, and that, as a matter of law, I should determine that any reliance on the part of Griffith (who I am to infer is experienced in acting as an issuer of title insurance) was not reasonable.

■ Taylor is incorrect, however, in his assertion that reasonable reliance is the proper standard under Section 523(a)(2)(A). Though prior to October, 1995, there was some debate regarding the applicability of a reasonable reliance standard in the Section 523(a)(2)(A) context, in *Field v. Mans*, the Supreme Court settled the question, holding that Section 523(a)(2)(A) "requires justifiable, but not reasonable reliance." *Id.* at ——, 116 S.Ct. at 446.

In *Field v. Mans*, the Supreme Court, by way of example and comment, expounded at length on the definition and scope of justifiable reliance. The Supreme Court stated as follows:

> The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he

tractors/materialmen rather than in its own right or in the shoes of the purchasers, the mere fact

of the written assignments does not itself give rise to nondischargeability.

made an investigation." Significantly for our purposes, the illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "walk[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage. Here a contrast between a justifiable and reasonable reliance is clear: "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Justifiability is not without some limits, however. As a comment to § 541 [of the Restatement] explains, a person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."

*Field v. Mans* at ——, 116 S.Ct. at 444 (citations omitted); *see also In re Vann*, 67. F.3d 277, 283 (11th Cir.1995) (stating that "[i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own").

In the case before me, Griffith alleges in paragraph 12 of the Complaint that it relied upon Taylor's affidavit in completing the relevant real estate settlements. The affidavit itself, on its face, gives no reason to doubt its validity, and Taylor's assertion that "the reasonably cautious title agent in an average business transaction involving new construction would insist on receiving a release of mechanics liens to insure clear title" is of limited relevance to the question of justifiable reliance as opposed to reasonable reliance. Under the circumstances, again, it cannot be said that Griffith can prove no set of facts under which justifiable reliance can be established.

**B.** *Section 523(a)(4)*

■ Pursuant to Section 523(a)(4), debts that arise from "fraud or defalcation" while the debtor is acting in a "fiduciary capacity" are nondischargeable under Section 523(a)(4) of the Bankruptcy Code. The traditional broad definition of fiduciary involving a relationship of confidence, trust and good faith is inapplicable in the 523(a)(4) context. *In re Librandi*, 183 B.R. 379, 382 (M.D.Pa.1995); *In re Lang*, 108 B.R. 586, 589 (Bankr. N.D.Ohio 1989); *In re Guy*, 101 B.R. 961, 983 (Bankr.N.D.Ind.1988). Only express and technical trusts qualify as fiduciary relationships in this context; constructive or implied trusts which may be imposed due to the very wrongful act out of which the debt arose, do not qualify. *See Librandi*, 183 B.R. at 382–83.

■ "Fiduciary" in the Section 523 context is to be interpreted according to federal bankruptcy law. *In re Racila*, 138 B.R. 303, 305 (Bankr.M.D.Fla.1992); *Guy*, 101 B.R. at 983. However, "state [and other federal] statutes can make certain parties fiduciaries 'by imposing trust-like duties, such as segregating accounts, on those who enter into certain kinds of contracts.'" *In re Standard*, 123 B.R. 444, 453 (Bankr.N.D.Ga. 1991) (quoting *In re Angelle*, 610 F.2d 1335, 1340 (5th Cir.1980)); *see also Lang*, 108 B.R. at 589; *Guy*, 101 B.R. at 983. *See generally In re Bennett*, 989 F.2d 779, 784–85 (5th Cir.1993). In order, however, for a fiduciary relationship under Section 523(a)(4) to arise under a statute, the statute must contain "sufficient words to create a trust, a definite subject, a certain object or *res*, with intent to create a trust relationship". *In re Anzman*, 73 B.R. 156, 166 (Bankr.D.Colo.1986); *see also Librandi*, 183 B.R. at 384; *In re Blumberg*, 112 B.R. 236, 243 (Bankr.N.D.Ill.1990).

■ In the instant case, Taylor has not identified a specific contractual or statutory basis that would support the existence of an express or technical trust, and I am not immediately aware of a Pennsylvania statute which would create one. I do note, however,

that in other jurisdictions such statutes do exist which create technical trusts in purchase proceeds for the benefit of purchasers and/or subcontractors/materialmen. *See In re Tripp,* 189 B.R. 29, 35 (Bankr.N.D.N.Y. 1995) (finding that "a trust relation created pursuant to [New York's lien law] is sufficient to establish the 'fiduciary capacity' delineated in Code § 523(a)(4)" for the benefit of materialmen); *In re Marino,* 115 B.R. 863, 869 (Bankr.D.Md.1990) (finding that Maryland Custom Home Protection Act created a technical trust in favor of purchasers). The parties have not identified the relevant authority in the instant case; therefore, to the extent Griffith is proceeding in the shoes of either the purchaser or the subcontractors/materialmen, I cannot say with assurance that, under no reading of the facts as alleged, can relief be founded upon Section 523(a)(4). Griffith will, of course, be required at trial to identify some specific contractual or applicable statutory provision that would support an express or technical trust should it pursue the Section 523(a)(4) claim.

C. *Section 523(a)(6)*

██ Section 523(a)(6) states that a discharge under Section 727, 11 U.S.C., does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The provisions of Section 523(a)(6), like the other subsections of Section 523, are to be construed strictly against the creditor and liberally in favor of the debtor. *In re Betts,* 149 B.R. 891, 895 (Bankr.N.D.Ill.1993), *aff'd,* 165 B.R. 870 (N.D.Ill.1994).

The Third Circuit has elaborated upon the standards set forth in Section 523(a)(6) as follows:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. The word 'willful' means 'deliberate and intentional,' a deliberate and intentional act which necessarily leads to injury. *Therefore a wrongful act done intentionally which necessarily produces harm and is without just cause or excuse may constitute a willful and malicious injury.*

*In re Braen,* 900 F.2d 621, 626 n. 4 (3d Cir.1990) (citing 3 Collier on Bankruptcy ¶ 523.16[1], at 523–129 (15th ed. 1989)) (emphasis added), *cert. denied* 498 U.S. 1066, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991); *In re Cheslock,* 148 B.R. 431, 435 (Bankr.W.D.Pa. 1992).

██ In the instant case, Count III of the Complaint states that Taylor:

Willfully and maliciously injured Plaintiff and/or its property, in that Defendant has made Plaintiff liable for mechanics' lien claims asserted against the subject properties after Defendant intentionally falsely represented that same would not occur.

Complaint, ¶ 22. Taylor asserts that these allegations do not state a claim under Section 523(a)(6). First, similar to his argument under Section 523(a)(2)(A), Taylor argues that, because he received nothing directly from Griffith, Griffith's claim under Section 523(a)(6) must fail. However, as stated by one bankruptcy court:

While the standard of proof is identical whether recovery is under § 523(a)(2)(A) or (a)(6), these sections differ in several respects.... Section 523(a)(2)(A) is focused upon money, property, services or the benefits thereof *obtained by* a debtor. Recovery under § 523(a)(6), however, is not premised upon anything being *obtained by* a debtor but rather focuses upon activities of a debtor which cause injury to another entity or to the property of another entity. A § 523(a)(6) action can be maintained by any entity damaged by a debtor's activity and need not be brought in consequence of property obtained from a creditor. In this sense, the breadth of situations giving rise to a cause of action under § 523(a)(6) is much broader than it is under § 523(a)(2)(A).

*In re Haakenson,* 159 B.R. 875, 887 (Bankr. D.N.D.1993). Therefore, even if I adopted the narrow standard under Section 523(a)(2)(A), Section 523(a)(6) still applies to a much broader range of wrongful conduct.

Taylor next argues that the particular type of injury alleged is not cognizable under Sec-

tion 523(a)(6). However, various courts have recognized that fraud can constitute a cause of action under Section 523(a)(6) if the conduct meets the tests of willfulness and malicious injury. *See In re Iommazzo,* 149 B.R. 767, 772 (Bankr.D.N.J.1993). For example, in *In re Marler,* 58 B.R. 481 (Bankr.D.Kan. 1986), the debtors, in connection with a real estate settlement, executed an affidavit which stated that there were "no outstanding bills on which mechanics liens can be obtained in favor of any materialman or laborers." There were, in fact, unpaid construction bills owed to the plaintiff and his subcontractors. The plaintiff obtained a judgment in state court and, upon the debtors' bankruptcy filing, sought a determination of nondischargeability pursuant to Section 523(a)(6). Based upon the state court's factual findings, the bankruptcy court concluded:

> the Court finds the debtors' conduct constitutes a willful and malicious injury to creditor. Knowing that several disputes existed which would have precluded mechanic's lien title insurance on the property, debtors willfully and wrongfully executed a false affidavit affirming that there were no outstanding bills which could give rise to mechanic's liens on the property.

*Marler,* 58 B.R. at 484.

I note that, following the Third Circuit precedent, to be successful on the Section 523(a)(6) claim, Griffith must establish at trial that Taylor's alleged misrepresentations *necessarily* led to its injuries. However, at this stage, Griffith's pleadings are sufficient to state a claim under that section, and the relief requested in Taylor's motion to dismiss will be denied.